Submitted on briefs September 19, affirmed October 3, 1922.

## CALDER ET AL. v. ORR ET AL.

### (209 Pac. 479.)

**Statutes—Constitutional Requirement as to Subjects and Titles of Acts must be Liberally Construed.**

1. Constitution, Article IV, Section 20, providing, "Every act shall embrace but one subject, and matters properly connected therewith, which subject shall be expressed in the title," is mandatory, but it is not designed to impede legislation, and should be liberally construed, and to warrant a court in holding an act invalid under it a conflict with its requirements must be palpably plain, and all reasonable doubt must be resolved in favor of the law.

**Statutes—Provision for Levy of Special Tax Held Within Title of Road Improvement Act—"Provide."**

2. The provision of General Laws of 1917, Chapter 299, Sections 12–15 (§§ 4588–4591, Or. L.), as to levying a special tax for the construction and maintenance of public roads, is germane to the title of the act, "To provide for surveying, opening, constructing, improving, reconstruction, repairing and maintaining public roads," and hence the act is not violative of Constitution, Article IV, Section 20, providing that every act shall embrace but one subject, and matters properly connected therewith, which shall be expressed in its title, the word "provide" being broad enough in meaning to include the matter of raising the necessary public money to meet the cost of the work.

**Statutes—Statute, Indefinite as to Publication of Notice of Road District Meetings, Held Valid, Where Legislative Intent is Obvious.**

3. Laws of 1917, Chapter 299, Section 15, relating to the giving of notices of contemplated road district meetings, providing that such notices shall be posted "at least ten days before the time stated therein for holding such meeting, in three conspicuous places," and if such meeting be "for the purpose of voting a special tax, by also causing the same to be published once each week for two consecutive weeks in a newspaper of general circulation," is not invalid for failure to specify when the notice shall be published, for, taking the statute as a whole, the legislative intent that it be published before the meeting is obvious.

**Constitutional Law—Statutes—Legislative Intent is Guide in Construing Statute—Duty of Court to Give Effect to Intent and Hold Statute Valid if Possible.**

4. It is the duty of the court to determine, if possible, the intent of the legislature, and give effect to that intent by holding the statute valid whenever reasonably possible.

**Highways — Budget of Contemplated Assessments Unnecessary in Notices of Road District Meetings.**

5. Laws of 1915, Chapter 222, providing for a budget estimate in notices of road district meetings, having been held unconstitutional

and no attempt having been made to include road district meetings in the budget law amendment of the same year to the act "establishing a general and uniform system of public schools," the declaration in the road law that, "In all other regards, the law of this state governing school district meetings, shall control at all road district meetings to be held for that purpose," was never intended to extend the budget law of school districts to road districts.

**Highways—Additional Road Tax Held not Invalid for Alleged Failure to Comply With Statute.**

6. The voting by the voters of a road district of an additional tax of $4,000 under Laws of 1917, Chapter 299, Section 14, providing that the taxpayers of a road district may, upon proper petition, vote a general tax for road purposes not to exceed ten mills on the dollar, is not invalid because expressed as a lump sum rather than as so many mills on the dollar.

From Polk: H. H. BELT, Judge.

In Banc.

This suit arises as a result of a special road tax levy by Road District No. 4, Polk County, Oregon. The plaintiffs, five in number, are land owners within the district. The complaint shows, among other things, the following proceedings had in reference to the special tax levy:

"In the County Court of the State of Oregon for the County of Polk.

"To the County Court of Polk County, Oregon, sitting for the transaction of county business:

"We, the undersigned freeholders (being not less than three resident freeholders, a freeholder is one owning real estate in the district) of Road District No. 4, Polk County, Oregon, hereby petition the above entitled court to call a district road meeting of the legal voters of the district for the purpose of voting a special tax for road purposes in said Road District as provided by Chapter 299 of the General Laws of Oregon for 1917, said meeting to be held at Lincoln School House in said district, Polk County, Oregon, on Saturday, the 29th day of November, 1919, at 10 o'clock A. M. of said day.

"Dated the 10th day of November, 1919.

"Name.              Address.        Road Dist.
"J. F. McKinlay,     Route 1,       Salem, Ore., ....
"W. F. Crawford,     Route 1,       Salem, Ore., ....
"C. W. Dancer,  '    Route 1,       Salem, Ore., ....
"R. C. Shepard,      Route 1,       Salem, Ore., ....
"A. M. Patrick,      Route 1,       Salem, Ore., ....

"Thereafter an order was made and entered in said County Court, as follows:

"In the County Court of the State of Oregon for the County of Polk.

"In the Matter of the Petition for Calling a Road District Meeting in Road District No. 4.

"ORDER.

"Now, on this 12th day of November, 1919, it appearing to the court from the petition hereunto annexed, that said petition is duly signed by three freeholders of the above named road district who are each resident taxpayers and duly qualified voters of said road district, and that it is necessary and proper that a meeting should be called as therein prayed for,

"It is therefore ordered, that the said petition be, and the same is hereby approved and that a meeting of the legal voters of said district be called for the purpose of levying a special road tax, at Lincoln School House in said district on Saturday, the 29th day of November, 1919, at the hour of 10 o'clock A. M. of said day, and that due notice of said meeting be given as required by law.

"And it further appearing that R. C. Shepard is a competent person for the posting of the notices of said meeting in said road district,

"It is therefore Ordered, that said R. C. Shepard be, and he is hereby authorized, ordered and directed to post three notices in conspicuous places in said road district.

"And it is further Ordered, that John W. Orr, Sheriff of Polk County, be and he is hereby directed

to post one copy of such notice on the bulletin board at the Polk County Court House.

"A. B. ROBINSON,
Judge.

"T. J. GRAVES,
"Commissioner."

"Thereafter, A. B. Robinson, County Judge of Polk County, Oregon, issued the following notice:

"NOTICE.

"Notice is hereby given that a Road District meeting will be held at the Lincoln School House, in Road District No. 4, in Polk County, Oregon, on Saturday, the 29th day of November, 1919, at 10:00 o'clock, A. M., for the purpose of levying an additional tax for road purposes in said district.

"A. B. ROBINSON,
"County Judge."

The complaint then recites:

"A copy of which notice was posted on the bulletin board at the court house in Dallas, Oregon, 10 days prior to the 29th day of November, 1919, to-wit: on the 12th day of November, 1919, by John W. Orr, Sheriff, and a copy of said notice was posted on November 12, 1919, in Road District No. 4, by R. C. Shepard at the following places: on Zena Corner tree, on Lincoln Store Building front and on Four Corners post, and an affidavit was filed with the county clerk by R. C. Shepard, alleging that each of said notices was posted in a conspicuous place within Road District No. 4, and an affidavit was filed by E. A. Koen alleging that he was publisher and printer of the Polk County Observer, a weekly and semi-weekly newspaper, and that a copy of said notice was published for once a week for three successive and consecutive weeks commencing with the issue of said newspaper dated and published November 13, 1919, and ending with the issue dated and published November 27, 1919; that on or about November 30, 1919, there was filed in the office of the county clerk minutes of taxpayers' meeting as follows, to-wit:

"MINUTES OF TAXPAYERS' MEETING.

"BE IT REMEMBERED, that a meeting of the resident taxpayers of Road District No. 4, in the County of Polk, State of Oregon, was held at the Lincoln School House, in Road District No. 4, in Polk County, Oregon, on the 29th day of November, 1919, and we, the undersigned chairman and secretary of said meeting, hereby certify that the following is a true report of said meeting.

"That there were present at said meeting 17 resident taxpayers of said road district, a list of whom is hereunto attached and made a part of the minutes of the meeting.

"At the time and place above mentioned the said meeting was organized by the election of R. C. Shepard as chairman and W. Frank Crawford as secretary of the meeting, who thereafter performed the duties of their respective offices.

"The chairman then stated that the meeting was called for the purpose of voting an additional tax for road purposes, and he then read the notice for the call of the meeting, and the proof of posting same in three public places in said district, and on the bulletin board at the county court house, in the city of Dallas, Polk County, Oregon, and he also read a copy of said notice published in the Polk County Observer, together with the proof of publishing same. It was moved, and seconded, that the resident taxpayers present proceed by ballot to vote a tax of $4,000 to be levied on all the taxable property in this road district as an additional tax to improve the roads of this district. The chairman then stated that if this tax is levied it will be an increase of more than 6% over the special tax of the previous year. The majority of the resident taxpayers present voted in favor of said tax and said vote was as follows, to-wit: Ayes, 16, Nays 0.

"The chairman declared the said levy of additional tax duly made by a majority vote of the taxpayers present at said meeting and the same was so levied.

"No further business appearing the meeting, on motion, was adjourned.

"Approved Saturday, the 29th day of November, 1919.

"R. C. SHEPARD,
"Chairman.
"W. FRANK CRAWFORD,
"Secretary.

"Moved by W. F. Crawford tax be $3,000.

"Amended by Chas. Scott to be $4,000. Seventeen voted for amendment [names follow.]"

The court sustained demurrer to the complaint. The plaintiffs refusing to plead further, a *nunc pro tunc* decree was entered, dismissing the complaint as of the fifteenth day of November, 1920. From that decree the plaintiffs appeal to this court.

Plaintiffs assert in their brief that the tax is void because Sections 12, 13, 14 and 15, Chapter 221, General Laws of 1917—Sections 4588, 4591, Or. L.—are unconstitutional, as failing to comply with Article IV, Section 20, Constitution, providing that "every act shall embrace but one subject and matters properly connected therewith, which subject shall be expressed in the title"; second, that the tax is void because of the failure of the petition or notice to show an itemized budget; further, for the reason that the total levy was expressed in dollars and cents and not made in mills; again, because of the indefiniteness of the statute relating to the publication of notice; and, finally, because of the absence of budget as required by Chapter 106, Laws of 1919.     AFFIRMED.

· For appellants there was a brief over the name of *Mr. George S. Shepherd.*

There was no appearance for respondents.

BROWN, J.—Article IV, Section 20, of the Constitution, providing that "every act shall embrace but one subject and matters properly connected therewith, which subject shall be expressed in the title, * * " has been before the court many times for exposition, and the cases are in accord. In the early case of *Simpson* v. *Bailey,* 3 Or. 515, this section of the Constitution received the court's attention. In 1868 (Laws 1868, p. 59), the legislative assembly passed an act entitled, "An act to change the location of the county seat of Umatilla County." Section 1 of that act provides for an election to locate the county seat, and, among other things, that—

"The present location, Umatilla landing, shall be one candidate, and Upper Umatilla, somewhere between the mouths of Wild Horse and Birch creeks, the other candidate, to be voted upon at said election."

Section 2 provides for the writing of the names of the candidates upon the poll-books; Section 3, that the County Court shall convene within one month after the election and appoint

"three competent persons to locate the site for the erection of new county buildings, and shall immediately select some point between the said mouths of Wild Horse and Birch creeks on the Upper Umatilla as in their judgment shall best subserve the interests of the whole county, and shall give an appropriate name to said new county seat."

Section 4 provides for time of removal, and Section 5, for expenses. The constitutionality of the act was challenged because of several alleged distinct subjects of legislation embraced in the act. The court said:

"It is true that this act provides for the submission of the question of the change of location to the voters,

the selection of the new site and the removal of the county buildings; but we apprehend that those are all matters properly connected with the 'change of the location,' which is the subject expressed in the title of the act * * . The object of the provision evidently was to prevent matters wholly foreign and disconnected from the subject expressed in the title from being inserted in the body of the act. This restriction is an important one, and well calculated to prevent imposition being practiced upon unsuspecting members by procuring their votes for bills with fair titles, which contain objectionable matters unconnected with the subject expressed in the title."

This decision was followed in *McWhirter* v. *Brainard,* 5 Or. 426; cited and explained in *Singer Mfg. Co.* v. *Graham,* 8 Or. 17 (34 Am. Rep. 572); cited in *O'Keefe* v. *Weber,* 14 Or. 55, 57 (12 Pac. 74); in *State ex rel.* v. *Richardson,* 48 Or. 309 (85 Pac. 225, 8 L. R. A. (N. S.) 362).

1. It is a well-established rule that before the court can declare a law unconstitutional on the grounds averred, the conflict must be palpably plain, and all reasonable doubt must be resolved in favor of the validity of the law: *State* v. *Shaw,* 22 Or. 287 (29 Pac. 1028). It is held in *Murphy* v. *Salem,* 49 Or. 54 (87 Pac. 532), that this provision of the constitution does not require the "matters properly connected" with the subject to be expressed in the title. It was said in *David* v. *Portland Water Committee,* 14 Or. 98 (12 Pac. 174), that "an act to amend an act to incorporate the City of Portland, approved, etc.," sufficiently discloses its object. The title need not specify the object in all particulars; it may state the general subject, but need not particularize.

Constitutional provisions such as ours relating to titles of statutes are mandatory, yet they are to be liberally construed. They were not designed to im-

pede legislation: *State* v. *Shaw, supra; State* v. *Kosh-land,* 25 Or. 178 (35 Pac. 32); *Escott* v. *Crescent Coal etc. Co.,* 56 Or. 190 (106 Pac. 452). This court will not hold this statute unconstitutional, even though it be of opinion that a better title might have been written. As was said in *State* v. *Morgan,* 2 S. D. 32 (48 N. W. 314):

"Whatever may be the scope of the act, it can embrace but one subject, and all its provisions must relate to that subject. They must be parts of it, incident to it, or in some reasonable sense auxiliary to the object in view. This constitutional requirement is addressed to the subject, not to the details, of the act. That subject must be expressed in the title. The subject must be single; the provisions to accomplish the object involved in that subject may be multifarious. It is not enough that the act embraces but one subject, and that all its parts are germane; but the title must express the subject, and comprehensively enough to include all the provisions in the body of the act. The title need not index all the details of the act. It is sufficient if the language used in the title, on a fair construction, indicates the purpose of the legislature, so that making every reasonable intendment in favor of the act it may be said that the subject of the law is expressed in the title. As said by the Supreme Court of Illinois, in the case of *Johnson* v. *People,* 83 Ill. 436, 'The constitution does not require that the subject of the bill shall be specifically and exactly expressed in the title; hence, we conclude that any expression in the title which calls attention to the subject of the bill, although in general terms, is all that is required. The constitution authorizes one subject, and any number of matters, provided they have any natural or logical connection with each other in legislation.' "

The writer is of opinion that what the court said in *Commonwealth* v. *Broad St. Rapid Transit St. R. Co.,* 219 Pa. St. 11 (67 Atl. 958), is sometimes applicable

to our own situation in the preparation of bills. The language follows:

"In a desire to conform to the constitutional requirement that the subject of an act must be clearly expressed in the title, it has become quite usual to load the title with details that have no proper place there. and produce certain inconvenience and not improbable danger. *Expressio unius exclusio alterius.* * * It has always been held that the title of an act need not be a complete index to its contents. The time has come to say that it not only need not, but ought not."

2. The title of Chapter 299, Laws of Oregon, 1917, the act assailed, reads:

"To provide for surveying, opening, constructing, improving, reconstructing, repairing and maintaining public roads, and repealing" certain acts and parts of acts.

Plaintiffs aver that Sections 12, 13, 14 and 15 of this chapter are unconstitutional because of their alleged conflict with the prohibition contained in Article IV, Section 20, of the Constitution. We here set out the title for the purpose of ascertaining whether the words therein used are broad enough to include the provisions of the sections of the statute referred to. The words "to provide for constructing public roads" convey much meaning. At the time the legislature adopted this act the term "provide," as used in the title thereof, had been judicially determined. In the case of *Corvallis & Eastern R. Co.* v. *Benson,* 61 Or. 359, 368 (121 Pac. 418), this court, speaking through Mr. Justice BURNETT, said:

"It is urged on the part of the defendants that to say in the title of the act of 1874 that it is 'to provide for the construction of the Willamette Valley & Coast Railroad' does not indicate that a grant of any state

lands was to be made to the company, and that such a grant, not being germane to the title, cannot stand. 'Provide' means 'to obtain or make ready supplies or means for future use.' Standard Dictionary. Also: 'To look out for in advance; to procure beforehand; to prepare; to supply, afford, contribute; to furnish, procure things in advance; to take measures in view of an expected or possible need.' Webster's New International Dictionary. Further: 'To procure or furnish supplies; * * to make ready, prepare.' Century Dictionary. The act of 1874 by its terms granted the tidelands in the then county of Benton to the Willamette Valley & Coast Railroad Company, and authorized it to mortgage them, under certain conditions, for the purpose of raising funds for the construction of the road. Within the meaning of the definitions of the term 'provide,' as noted above, this was clearly germane to the title of the act. It was plainly notice to any legislator voting upon the bill that the state intended in some way to aid the construction of the road."

It costs money to survey, lay out, grade, rock, or to pave highways; and when the legislature undertakes to provide for the establishment and construction of public ways, it of necessity contemplates the use of public moneys. Such funds are usually derived from taxation in some form. Hence, the matter of levying a special tax for the construction and maintenance of public roads is clearly germane to the title of the act providing for " * * constructing, improving, reconstructing, repairing and maintaining public roads."

3. The act is attacked because its provisions are "indefinite and uncertain" in regard to the publication of notice of taxpayers' meeting, this view being based upon *Leffingwell* v. *Lane County,* 64 Or. 144 (129 Pac. 538), and *Linn & Lane Timber Co.* v. *Linn County,* 65 Or. 595 (133 Pac. 347). Neither of these

cases applies to the present statute. Those cases annulled Section 6321, L. O. L., and held that

"it is so indefinite as to be invalid, in that it does not direct whether notice is to be given before or after the meeting, does not expressly authorize the taxpayers to call such a meeting, does not specify the length of time notice shall be given, and does not prescribe a method of proving that notice was given, or that the persons participating in the meeting were taxpayers."

The defects in the old statute have been removed by the new.

Section 15, Chapter 299, Laws of 1917, relating to the giving of notices of special road district meetings, enacts that such notices shall be prepared by the County Court and signed by the county judge or commissioner; that they shall set forth the purposes of such meeting, and the time and place it is to be held. In providing for the giving of notices, the statute requires that they be posted by certain persons therein named, or by other competent persons,

"at least ten days before the time stated therein for holding such meeting, in three conspicuous places within such road district, and in the customary place for posting notices at the courthouse in the county wherein such road district lies, and, if such notices are for a meeting called for the purpose of voting a special tax, by also causing the same to be published once each week for two successive weeks in a newspaper of general circulation throughout said county. Proof of the posting of any such notices shall be made by affidavit of the person posting them, indorsed upon or attached to a certified copy of the notices posted, and filed with the county clerk."

It is true that while the statute provides that the notices must be posted at least ten days before the time for holding the special road meeting, it does not

in terms directly state that the notice published in the newspaper is required to be so published for two successive weeks prior to such meeting. But from the act as a whole, and from the language used in the section concerning the giving of notice, the natural inference is that it was the intent of the legislative assembly—and its intent, when ascertained, is the law—that the notice of the meeting published in the newspaper, like the notice posted, should appear before the date of the special meeting.

4. It is a canon of construction that in the interpretation of statutes, the duty of the court is to ascertain and give effect to the intention of the legislature. Another maxim of construction is, that if reasonably possible, a statute should be so construed as to render it valid. This can be done without violence to the language of the statute.

5, 6. We now come to the assignment relating to the absence of budget: Section 4088, L. O. L. (5139, Or. L.), is Sections 43 and 44 (p. 41), General Laws of Oregon, 1901, which is an act "to further provide for the establishment of a uniform and general system of public schools in Oregon * * ." This act was amended by Chapter 56, Laws of Oregon, 1915, again by Chapter 206, Laws of Oregon, 1917, and again by Chapter 106, Laws of Oregon, 1919. The act of 1915 amended the statute by providing that "no tax shall be levied at any meeting unless the call for such meeting shall contain an itemized budget showing contemplated expenditures." This provision was carried into the later amendments noted, and had reference to taxes levied under the act establishing a "uniform and general system of public schools in Oregon * * ." No attempt was made to include road districts. Chapter 222, Laws of 1915, the budget law affecting

road districts, was held to be unconstitutional in *Martin* v. *Gilliam County*, 89 Or. 394 (173 Pac. 938). The language of the road law reading,—

"In all other regards, the law of this state governing school district meetings, shall control at all road district meetings to be held for that purpose,"

was never intended to extend the budget law of school districts to road districts.

"The terms 'tax' and 'taxes' have been defined as a rate or sum of money assessed on the person or property of a citizen by government for the use of the nation or states; burdens or charges imposed by the legislative power upon persons or property to raise money for public purposes * * ." 37 Cyc. 706.

Section 14 reads, in part:

"The resident taxpayers of any road district in any county of this state may vote an additional tax not to exceed ten mills on the dollar, on all taxable property of the road district"

when authorized by the County Court upon proper petition. If a majority of legal voters present favor such a tax and vote for it, the chairman and secretary of the meeting shall cause to be filed with the county clerk a certified copy of the minutes of the meeting, and the clerk shall furnish a certified copy thereof to the county assessor, who shall compute and extend such tax levy on the assessment-roll for that year.

The statute is sufficient and has been followed.

This case is affirmed.                    AFFIRMED.

Mr. Chief Justice BURNETT took no part in this decision.