[File No. 6783.]

OSAGE NATIONAL BANK, a National Banking Corporation, Respondent, v. OAKES SPECIAL SCHOOL DISTRICT, a Public Corporation, Appellant.

(7 NW(2d)920.)

Opinion filed February 17, 1943.

*F. J. Graham and Geo. W. Thorp,* for appellant.

458

460

*Walton S. Russell* and *C. F. Kelsch,* for respondent.

BURKE, J. This is an action upon six warrants in the sum of $1,000 each issued by the defendant Oakes Special School District. The sole question in the case is whether the warrants evidenced a debt in excess of the district's debt limit and are therefore void. After a

trial in district court, without a jury, judgment was entered in favor of the plaintiff. Defendant has appealed from the judgment.

Prior to 1920 our Constitution provided: "The debt of any . . . school district . . . shall never exceed five per centum upon the assessed value of the taxable property therein. . . ."

By a constitutional amendment adopted March 17, 1920, this section was amended to provide: " . . . a school district, by a majority vote may increase such indebtedness five per cent on such assessed value beyond said five per centum limit." (Article 35 of Amendments to the Constitution.)

On July 13, 1920, the board of education of Oakes Special School District adopted the following resolution: "Be it resolved by the Board of Education of the Special School District of Oakes, N. D. that a special election be held on the 3rd day of August, 1920, for the purpose of submitting to the voters of said District the following question. Shall the debt limit of Oakes Special School District be increased in an amount equal to five per cent (5%) of the assessed valuation of the taxable property within said District?"

Following the adoption of this resolution the clerk of the board of education gave notice of election as follows: "Notice is hereby given that a special election will be held in the Oakes Special School District on Tuesday, August 3, 1920, for the purpose of submitting to the electors of the district the following question: 'Shall the debt limit of Oakes Special School District be increased in an amount equal to five per cent (5%) of the assessed valuation of the taxable property within said district.' Polls open in the City Hall 9 a. m. to 4 p. m."

The above notice of election was posted at five public places within the district on July 15, 1920, and was published in The Oakes Times a weekly paper of general circulation published within said district on July 15, July 22, and July 29, 1920.

At the election held on August 3, 1920, the form of ballot provided for the electors was as follows:

"BALLOT
Special School Election
August 3, 1920.

For increasing the debt of Oakes Special School District— Shall the debt limit of Oakes Special School District be increased in an amount equal to five per cent (5 per cent) of the assessed valuation of the taxable property within said district.

YES ...........................

NO ........................·......"

At the election a poll book was kept and the names of all electors voting at said election were recorded therein. Two days after the election, on August 5, the board of education met for the purpose of canvassing the votes cast at said election and at that time made the followng record of its proceedings: "Meeting called for the purpose of canvassing votes of the special election held August 3, 1920, for submitting to the voters of said District the following question. Shall the debt limit of Oakes Special School District be increased in an amount equal to five per cent (5%)? Upon canvassing votes the Board finds there were 359 votes cast. 357 for increasing the debt limit. 1 against increasing the debt limit, and 1 vote not marked. Therefore question for increasing the debt limit carried by 357 votes. Moved and seconded that the Clerk be instructed to notify the County Auditor of said Election. Motion carried."

Shortly thereafter the board of education entered into a contract for the construction of a new school building in said district and together with other bonds and warrants issued the warrants sued on in this case in payment of the district's obligations under said contract. These warrants are numbered 150 to 155 inclusive and each is of tenor and effect as follows: "State of North Dakota, County of Dickey, City of Oakes, December 9, 1920. Treasurer of Special School District, City of Oakes, PAY TO Fred E. Peterson or order, the sum of One Thousand and No/100 Dollars, for School House Contract out of any money in your hands, not otherwise appropriated, belonging to the Contingent Fund of said School District. By order of the School Board of Special School District, City of Oakes. J. H. Coulter, President, F. H. Ferber, District Clerk." Each warrant also bears the clerk's certificate that it evidences an indebtedness within the district's debt limit and the district treasurer's endorsement that it was presented for payment on the 11th day of December 1920

and not paid for want of funds. These warrants were sold and assigned to the plaintiff in March, 1925.

At the time of the election proceedings above set forth and at the time of the issuance of the warrants, article 35 of amendments to the state Constitution had been adopted but the legislature had not acted to authorize special school districts to hold elections to vote upon the question of increasnig the district debt limit nor had there been any legislative repeal or amendment of § 1275 Comp. Laws of North Dakota 1913, which provided: " . . . and no district shall issue bonds in pursuance of this article in a sum greater than five per cent of its assessed valuation, including other debts."

In 1923, however, the legislature enacted two measures which according to their titles were for the purpose of "legalizing and validating certain indebtedness of school districts." They are chapters 277 and 278, Laws of North Dakota 1923. Chapter 278 provides: "Where the officers of any common, special or independent school district of this state shall have incurred indebtedness and issued warrants for the erection, purchase, repair or maintenance of any school building, . . . and said warrants are outstanding, in any or all such cases where said warrants are within the five per cent limit of the district, the same are hereby legalized and declared to be the valid indebtedness of such school district; and in all cases where an election has heretofore been held in any school district and the electors of such school district have at such election, by a majority vote, determined to increase the indebtedness of such district five per cent on the assessed value of the taxable property in such district, beyond said original five per cent limit, as provided in Article 35 of Amendments to the Constitution of the State of North Dakota, in any or all such cases where said warrants are within the said additional five per cent limit so voted, as aforesaid, the same are hereby legalized and declared to be the valid indebtedness of such school district. . . ." Chapter 277 relates to bonds and by its terms validates bonds of school districts under substantially the same conditions as are provided in chapter 278 for the validation of warrants. One difference to which appellant refers in its argument is that chapter 277 requires that the election to increase the debt limit must have been held, "in accordance

with the laws then in force relating to elections in such district," while chapter 278 does not require that any specific election procedure shall have been followed.

As we view it there is no issue of fact in the case. At the trial both the plaintiff and the defendant proceeded upon the theory that the warrants in suit were issued at a time when the debt of the issuing district was in excess of 5 per cent and less than 10 per cent of the assessed valuation of the taxable property within the district. The case rests therefore upon the effect which is to be given to article 35 of amendments to the Constitution and to chapter 278 above set forth. Defendant contends:

1. That constitutional provisions relating to the debt limits of political subdivisions are limitations upon the legislature and not grants of power to the political subdivisions.

2. That the provision of article 35 of amendments which reads, "A school district, by a majority vote may increase such indebtedness 5 per cent on such assessed value beyond said 5 per centum limit," is not self-executing and requires legislative action to make it effective.

3. That the legislature was without power to validate warrants issued in excess of the 5 per cent debt limit of a district where the electors of the district had assented to an increase of the debt limit at an unauthorized election.

Since defendant cannot prevail if it is wrong upon the contention last stated even though it be right upon the other two, we will consider that proposition first. Defendant concedes that the legislature had the power at any time after July 1, 1920, to authorize a school district to hold an election for the purpose of determining whether it should increase its debt limit. But, says the defendant, at the time of the purported election there was no statutory authorization which would enable a special school district to hold an election upon the question of increasing its debt limit; that an unauthorized election is wholly void; that it was in effect no election at all and that in these circumstances, the legislative validation of the indebtedness of the district in excess of the original 5 per cent would amount to permitting the district to increase its debt limit above 5 per cent of the assessed value of the tax-

able property therein without an election, something which it has no power to do under the Constitution.

We do not think defendant's position is well taken. It is true of course that the legislature had no power to authorize a school district to increase its debt limit over the 5 per cent limit without an election, but that does not mean that it could not recognize and validate a proceeding as an election if it was such that it would have constituted a valid election, had it been previously authorized. "Common expressions of the rule are to the effect that the legislature may validate retrospectively any proceeding which it might have authorized in advance." 16 CJS 876. As is stated in McQuillin, Municipal Corporations, Rev ed, § 2469, "Bonds issued without authority of law may be validated by a subsequent statute, provided the legislature could have authorized the issuance of such bonds in the first place." The stated rule includes the validation of unauthorized elections. In Anderson v. Santa Anna Twp. 116 US 356, 29 L ed 633, 6 S Ct 413, in deciding this same question the Supreme Court of the United States said: "As the constitution of the State did not provide any particular mode in which the corporate authorities of a township should manifest their willingness or desire to incur a municipal debt for railroad purposes, we perceive no reason why the action of the majority of legal voters, at an election held in advance of legislative action might not be recognized by the legislature and constitute the basis of its subsequent assent to the creation of such indebtedness and its ratification of what had been done."

In Grenada County v. Brogden, 112 US 261, 28 L ed 704, 5 S Ct 125, the same court in discussing the identical question said: "Since what was done in this case under a constitutional majority of qualified electors and by the board of supervisors of the county would have been legal and binding had it been done under legislative authority previously conferred, it is not perceived why subsequent legislative ratification is not, in the absence of constitutional restrictions equivalent to original authority."

In the First Nat. Bank v. Yankton County, 101 US 129, 25 L ed 1046, the validity of an election authorized by the Territorial Legislative Assembly of Dakota was challenged upon the ground that the

authorization was made at a special session which had been called without legal authority. Subsequent to the holding of the election Congress had enacted a validating measure. In passing upon the question the court said: "We do not consider it necessary to decide in this case whether the governor of Dakota had authority to call an extra session of the Legislative Assembly nor whether a law passed at such a session or after the limited term of forty days had expired would be valid, because, as we think the Act of May 27, 1872, is equivalent to a grant of power direct from Congress to the county to issue the bonds in dispute. . . . The question in the case is one of power only. As we think the vote of the people of the county was validated by Congress."

See also Redlands v. Brook, 151 Cal 474, 91 P 150; Bridgeport v. Housatonic R. Co. 16 Conn 475; Schneck v. Jeffersonville, 152 Ind 204, 52 NE 212; Shurtleff v. Wiscasset, 74 Me 130; Memphis & C. R. Co. v. Bullen, 154 Miss 536, 121 So 826; Weber v. Helena, 89 Mont 109, 297 P 455; Wharton v. Greensboro, 149 NC 62, 62 SE 740.

In this case the trial court found that the election which was held was in substantial compliance with the statutory provisions then in force relating to elections in special school districts for such purposes as were then authorized. That finding is not challenged. We have set the proceedings out at length earlier in this opinion. No element necessary to a full, free and fair expression of the opinion of the electors of the district is absent. It was clearly such an election as would have been valid had it been sanctioned by prior legislative action. This being true it was within the power of the legislature to ratify the election by subsequent action. We therefore hold that the warrants sued on in this case were validated by chapter 278, supra. As this holding disposes of the lawsuit it is unnecessary for us to pass upon any of the other issues raised by the parties.

The judgment of the district court is accordingly affirmed.

MORRIS, Ch. J., and NUESSLE, BURR, and CHRISTIANSON, JJ., concur.