Argued November 20, 1956, affirmed in part, reversed in part
January 9, petition for rehearing denied March 20, 1957

## NORTHERN WASCO COUNTY PEOPLE'S UTILITY DISTRICT ET AL v. WASCO COUNTY ET AL, DALLES CITY ET AL

305 P. 2d 766

3

*Raymond M. Kell,* Portland, argued the cause for plaintiffs-respondents and cross-appellants. With him on the brief was Clifford B. Alterman, Portland.

*Theodore W. de Looze,* Assistant Attorney General, Portland, argued the cause for Robert Y. Thornton, Attorney General, defendant-appellant and cross-respondent. With him on the brief were Donald E. Heisler, Dalles City, Attorney for defendants-appellants and cross-respondents, and Charles A. Phipps, Dalles City, Attorney for intervenors uniting with defendants-appellants and cross-respondents.

ROSSMAN, J.

This is an appeal from a decree of the circuit court which it entered in a declaratory judgment proceeding instituted by the plaintiff, Northern Wasco County People's Utility District and five individuals who are the board of directors of that quasi-municipal corporation.

The plaintiffs are the municipal body and individuals just mentioned. The defendants are Wasco County, the County Court of that county, several officials of Wasco County and the Attorney General of

Oregon. Dalles City, Oregon Business and Tax Research, Inc., and five Wasco County taxpayers became intervenors. Hereafter our use of the word plaintiff will refer to Northern Wasco County People's Utility District. Instead of using the term defendants or appellants we will speak of the county, it being the tax-levying body.

The challenged decree held that (1) Oregon Laws 1939, ch 343, § 1, subd 14, which undertook to amend Oregon Laws 1909, ch 218, violated Oregon Constitution, Art IV, § 20, inasmuch as its subject matter was not within the title of the 1909 act; (2) Oregon Laws 1939, ch 387, § 10, did not empower the State Tax Commission to assess the plaintiff's property for 1950; and (3) Oregon Laws 1939, ch 387, § 10, and Oregon Laws 1951, ch 586, § 2, subd 14, empowered the tax commission to assess the plaintiff's property for taxation for 1951, 1952 and 1953. The tax commission relied in part upon Oregon Laws 1939, ch 343, § 1, subd 14, when it assessed the plaintiff's property for the year 1950.

The challenged decree held invalid the 1950 assessment, but sustained the validity of the other three.

As is evident from what has been said, the property taxes under review were assessed and levied against the plaintiff pursuant to two statutes adopted in 1939: One (Oregon Laws 1939, ch 387, § 10) amended the People's Utility District law (Oregon Laws 1931, ch 279) to provide that electric properties of districts should be assessed and taxed in the same manner as similar property owned by private corporations; the other (Oregon Laws 1939, ch 343, § 1, subd 14) was an amendment to Oregon Laws 1909, ch 218, which created the State Tax Commission. The amendment

added people's utility districts to the companies whose properties were assessable by the tax commission.

As we proceed we will continue to refer to the session laws rather than to the places in ORS where they now appear. However, we will now state briefly where the legislation so far mentioned may be found in ORS. The enactment of legislation for the creation of people's utility districts was authorized when Art. XI, § 12, was added to the Constitution of Oregon. See Oregon Laws 1931, p 7. Following the adoption of that constitutional amendment, Oregon Laws 1931, ch 279, p 477, was enacted making provision for people's utility districts. That act, as subsequently amended, is ORS 261.005 through 261.730. Oregon Laws 1909, ch 218, since amended, which created the State Tax Commission and conferred upon it power, is ORS 306.010 through 308.820.

The following defendants each filed notices of appeal: (1) the Attorney General, (2) Dalles City, and (3) Wasco County, its county court and aforementioned officials. The plaintiffs cross-appealed. The three notices of appeal challenged the holdings that Oregon Laws 1939, ch 343, § 1, is invalid and that Oregon Laws 1939, ch 387, § 10, did not authorize the 1950 assessment. The cross-appeal singled out as the subject of its attack the part of the decree which sustained the validity of the assessments for 1951, 1952 and 1953.

As is apparent from the foregoing, the plaintiff instituted this proceeding to secure a declaratory decree holding that it is not subject to ad valorem property taxes levied in the years 1950 through 1953. We will now consider the validity of the 1950 assessment.

In behalf of the county it is argued that the 1950 assessment can be sustained upon any of the following

bases: (1) Oregon Laws 1939, ch 343, § 1, subd 14, did not at the time of its enactment violate Oregon Constitution, Art IV, § 20; (2) if the 1939 act just mentioned violated Oregon Constitution, Art IV, § 20, then it was validated by the 1952 amendment of Art IV, § 20, or by the long period of legislative acquiescence, or by the enactment of Oregon Laws 1951, ch 586, § 29; (3) the 1950 assessment was independently authorized by Oregon Laws 1939, ch 387, § 10.

Constitution of Oregon, Art IV, § 20, prior to its amendment in 1952, read:

"Every act shall embrace but one subject, and matters properly connected therewith, which subject shall be expressed in the title. But if any subject shall be embraced in an act which shall, not be expressed in the title, such act shall be void only as to so much thereof as shall not be expressed in the title."

Similar, and in many instances, identical, provisions are found in the constitutions of other states. They were enacted to prevent concealment from the public, as well as of the members of the legislature, of the true nature of the provisions of a bill and of logrolling practices.

█ The question presented here is the validity of that part of subd 14, § 1, ch 343, Oregon Laws 1939, purporting to authorize the State Tax Commission to assess the property of pepole's utility districts. Since ch 343, Oregon Laws 1939, amended ch 218, Oregon Laws 1909, the provisions of the former must, therefore, be tested for their validity under Art IV, § 20, as if they had been included in the 1909 enactment itself. *Administrator of Veterans' Affairs v. United States National Bank of Portland,* 191 Or 203, 229 P2d

276. The title of ch 218, Oregon Laws 1909, consumes almost a page of fine print, but, as pertinent, reads:

"An act to create a Board of Tax Commissioners, and to prescribe the membership thereof and its powers and duties, meetings and procedure, and for appeals therefrom; * * * providing for the assessment for taxation by it and apportionment to the several counties of the property of railway, union station and depot, electric and street railway, refrigerator car, oil and tank line companies, owners and operators, and of such heat, light, power, water, gas and electric companies as may be doing business as one system, partly within this State and partly without or so doing business in more than one county of the State, * * *."

The county concedes that the district, its business being confined wholly within one county, is not one of the types of companies enumerated in the title of the 1909 act.

Applicability of Art IV, § 20, to acts, the provisions of which were not specifically set out in their titles, has been tested in a great body of decisions by this court. Because we believe that the title here under consideration is of a unique type, the three types found will be explained and illustrated. The first type, broad in scope, may be called general and is exemplified by the titles under consideration in the following cases: *State v. Shaw,* 22 Or 287, 29 P 1028 ("An act to protect salmon and other food fishes in the state of Oregon, and upon all waters upon which this state has concurrent jurisdiction and to repeal * * *"); *Lovejoy v. City of Portland,* 95 Or 459, 188 P 207 ("An act to provide for the regulation and supervision of insurance in the state of Oregon, other than state industrial accident insurance, and repealing * * *"); *Calder v. Orr,* 105 Or 223, 209 P 479 ("An act to provide for

surveying, opening, constructing, improving, reconstructing, repairing and maintaining public roads, and repealing  *  *  *'') ; and *Petition of Board of Directors of Tillamook People's Utility District,* 160 Or 530, 86 P2d 460 (''An act relating to and providing for peoples' utility districts, and providing a penalty for violation of certain parts thereof.'').

The second type, narrower in scope, may be termed restrictive. This type is found in *First National Bank of Corvallis v. Benton County,* 175 Or 485, 154 P2d 841 (''An act  *  *  *  to provide for the collection of taxes on personal property where such taxes may not become a lien on sufficient real property to insure the payment thereof.'') ; and *Administrator of Veterans' Affairs v. United States National Bank of Portland,* supra, (''An act requiring guardians of minors, insane and incompetent persons receiving pensions, compensation, insurance or other benefit from the United States to serve certain petitions and accounts upon representatives of the United States government.'').

The third type, illustrated by the title at issue in this case, has been considered by this court in far fewer cases than either of the other two types. It may be called the general and specific type; that is, its initial phrases are analogous to the general type of title, but instead of stopping there it proceeds to set out a complete or partial index to the provisions of the act. Other examples of this type are found in *Eastman v. Jennings-McRae Logging Co.,* 69 Or 1, 138 P 216, and *Foeller v. Housing Authority of Portland,* 198 Or 205, 256 P2d 752.

The Eastman decision is in point. It held that a provision for civil remedies was not violative of Art IV, § 20, despite the fact that it was contained in an

act, the title of which read "An act for the protection of the forests of the state of Oregon; to prevent and suppress forest fires; * * *." and continued to set out some of the specific means to accomplish that end, but not the one relating to civil remedies. Decisions from other jurisdictions with like constitutional provisions can be cited in support of the Eastman decision: *Goetz v. Smith,* 152 Tenn, 451, 278 SW 417; *Lowden v. Luther,* 190 Okl 31, 120 P2d 359.

■ These decisions would seem to require a holding that the statutory amendment here was constitutional. There is one further qualification to the general rule which they enunciate, however. In accord with the purpose of Art IV, § 20, to prevent the misleading of the public and the legislature, a provision omitted from a title with an "index" cannot stand if the remainder of the title would affirmatively lead the reader to believe that the list in the title was a complete enumeration of like provisions in the act.

Concern over such titles was expressed in *Calder v. Orr,* supra, where the court quoted with approval from *Commonwealth v. Broad St. Rapid Transit St. R. Co.,* 219 Pa 11, 67 A 958, the following:

> "In the desire to conform to the constitutional requirement that the subject of an act must be clearly expressed in the title, it has become quite usual to load the title with details that have no proper place there and produce certain inconvenience and not improbable danger. Expressio unius exclusio alterius * * *. It has always been held that the title of an act need not be a complete index of its contents. The time has come to say that it not only need not but ought not."

*Chapman v. South Dakota Rural Credits Board,* 46 SD 72, 190 NW 884, counsels:

> "The best title is one that is comprehensive, one

that does not purport to be an index. An index is dangerous as a title to an act, because if incomplete, it may mislead; * * *."

*In re Sugar Notch Borough*, 192 Pa St 349, 43 A 985, said:

"Where a general title, sufficient to cover all the provisions of an act, is followed by specifications of the particular branches of the subject with which it proposes to deal, the scope of the act is not limited, nor the validity of the title impaired, except as to such portions of the general subject as legislators and others would naturally and reasonably be led by the qualifying words to suppose would not be affected by the act. * * * The express enumeration of the specific subjects must be affirmatively misleading as to the intent to exclude others, or the title will not be made invalid by it."

*Commonwealth v. Miller*, 313 Pa 140, 169 A 436; *State v. County Commissioners*, 19 Nev 332, 10 P 901; but see *Hidalgo and Cameron Counties v. American R. G. L. & I. Co.*, 103 F2d 509 (5th Cir).

We now turn to *The State v. Bowers*, 14 Ind 195. The original statute was entitled "An act concerning licenses to vend foreign merchandise, to exhibit any caravan, menagerie, circus, rope and wire dancing, puppet show, and legerdemain." The amendatory act included a provision for the licensing of concerts. That provision was held to be void. The subject of the original act was held to be "licenses" but this was applied and limited to the matters enumerated. The court said:

"The specification in the title, of the cases in which licenses are required, entirely negatives the idea that the act itself extends beyond the cases enumerated."

■ Applying that doctrine to the title of ch 218, Oregon Laws 1909, it can be seen that the listing of

companies subject to assessment purports to be complete and would necessarily imply that other types of companies could not be assessed thereunder. An addition of other companies in the body of the act without change in the title was affirmatively misleading and the provisions relating to such other companies, therefore, ran afoul of Art IV, § 20.

The County contends that, regardless of the original validity of subd 14, § 1, ch 343, Oregon Laws 1939, with respect to Art IV, § 20, the statute was validated by the 1952 amendment to Art IV, § 20, which reads:

"This section shall not be construed to prevent the inclusion in an amendatory act, under a proper title, of matters otherwise germane to the same general subject, although the title or titles of the original act or acts may not have been sufficiently broad to have permitted such matter to have been so included in such original act or acts, or any of them."

The County asks the court to hold that the foregoing language validates a statutory provision which was void when enacted in 1939. Such a holding would not be proper. The applicable rule is set out in 16 CJS, Constitutional Law, § 45, as follows:

"A constitutional provision may ratify and validate a previously enacted statute, but it will not so operate unless an intention to do so is clearly manifested. * * * a constitutional provision which from the language used shows expressly or by necessary implication that it was intended to operate retrospectively by validating antecedent unconstitutional legislation, renders valid all such legislation to which the constitutional provision relates, without reenactment by the legislature."

Does the language of the amendment to Art IV, § 20, clearly manifest an intent that it apply to amend-

ments passed prior to its own adoption? The answer must be no. The county emphasizes the language "shall not be construed" and contends that all statutory amendments thereafter challenged come under the provisions of the constitutional amendment. Of course, the constitutional amendment must apply to all cases arising after its adoption; it could not apply to cases already decided by this court. The crucial question, however, is whether the language "to prevent the inclusion in an amendatory act" clearly manifests an intent to operate on amendments theretofore enacted. No such intent can be divined from that phraseology and, therefore, it must be held that the "amendatory act" referred to in the constitutional amendment refers only to those amendatory acts passed subsequent to the effective date of the amendment to Art IV, § 20.

A further aid in answering this question can be found in the limited scope of the constitutional amendment. It refers only to amendatory acts and, therefore, was not intended to remove the restrictions placed on original acts by the first paragraph of Art IV, § 20. As matters now stand, an amendatory act passed tomorrow can constitutionally contain provisions which would have been constitutionally objectionable if they had been included in the original act, passed today.

The unconstitutionality of that part of subd 14, § 1, ch 343, Oregon Laws 1939, which relates to the taxation of people's utility districts does not, however, demand a conclusion that the 1950 assessment upon plaintiff's property is invalid.

In 1951 the legislature enacted Oregon Laws 1951, ch 586, which prescribed the powers and duties of the State Tax Commission and repealed, among others,

§ 110-505, OCLA, which was the codification of Oregon Laws 1939, ch 343, above cited.

Section 29 of ch 586, Oregon Laws 1951, reads as follows:

"All assessments and apportionments thereof made by the State Tax Commission, and all tax collections, under the statutes repealed herein are hereby ratified and confirmed, and no such assessment, apportionment or tax collection shall be invalidated or set aside for irregularities, omissions or defects, or any defect of the statutes herein repealed, provided such assessment, apportionment or collection was made in substantial compliance with the intent of the statutes herein repealed and of the provisions of this Act which replace those statutes."

Assuming at this point that the court below was correct in ruling that there is no constitutional bar to the taxation of pepole's utility districts by proper legislation, the following question is presented: Can an assessment made under authority of a void statute be validated by later curative legislation when the legislature could have originally authorized the assessment under a proper statute? The better authority answers that question in the affirmative. Although this is an issue of first instance in Oregon, this court has twice so stated by way of dicta. In *Smith v. Cameron*, 123 Or 501, 262 P 946, it was said:

"A Legislature may pass a retroactive law which could validate any act which it could in the first instance have authorized, subject to the restriction that it could not impair the obligation of contract or a vested right."

Plaintiff has made no claim that its vested rights have been impaired, and we see no such impairment. The following was quoted by *Spence v. Watson*, 182 Or

233, 186 P2d 785, from the exhaustive annotation which appears in 140 ALR 959, 984:

"On the other hand, in some cases the scope and extent of the legislative power to remedy, by curative statutes, defects in tax proceedings is limited solely and exclusively by constitutional prohibition. Under this view the power of the legislature, rather than the power of the taxing authorities is the test of the effectiveness of curative statutes, and a lack of jurisdiction in the taxing authorities, whether arising from the lack of any valid enabling statute or from a failure of the tax authorities to comply with purely statutory jurisdictional requirements, is not beyond the reach of curative legislation."

*Nottage v. City of Portland,* 35 Or 539, 58 P 883; *Thomas v. City of Portland,* 40 Or 50, 66 P 439; and *Brown v. City of Silverton,* 97 Or 441, 190 P 971, affirm the rule of which we have just taken note. *Watson v. Jantzer,* 151 Or 1, 47 P2d 239, was concerned with a total lack of notice. In *Peterson v. Graham,* 131 Or 290, 279 P 553, 282 P 1084, the defect in the notice rendered the latter void. The deficiencies in those two proceedings were beyond the reach of curative legislation. Dicta in those two decisions contrary to the language just quoted from *Smith v. Cameron,* supra, is disapproved.

A number of jurisdictions, notably Illinois, (*People v. Thompson,* 377 Ill 104, 35 NE2d 355) and California (*Miller v. McKenna,* 23 Cal2d 774, 147 P2d 531) adhere to the view that invalidity of the enabling statute prevents the legislature from ratifying acts done pursuant to it, but others, including Iowa, (*Chicago, R. I. & P. Ry. Co. v. Streepy,* 211 Iowa 1334, 236 NW 24), Tennessee (*Cincinnati, N. O. & T. P. Ry. Co. v. Rhea County,* 194 Tenn 167, 250 SW2d 60) and North Dakota (*Osage Natl. Bank v. Oakes Special School Dist,* 72 ND

457, 7 NW2d 920) are in accord with the general rule that the legislature can ratify any action which it could have authorized in the first instance. We are satisfied that the 1951 act was valid and that it properly ratified the assessment made under the invalid act, unless other objections to the validity of the assessment, later to be considered, must be sustained.

Still another measure enacted in 1939, which we have cited, lent validity to the 1950 assessment, unless that measure, for reasons which we will presently consider, violated a constitutional rule. The measure which we have in mind is Oregon Laws 1939, ch 387, § 10, which we have said amended the Peoples' Utility District law (Oregon Laws 1931, ch 279). Section 10 of chapter 387 said:

> "All property, real and personal, owned, used, operated or controlled by any peoples' utility district, in or for the production, transmission, distribution or furnishing of electric power or energy or electric service for or to the public, shall be assessed and taxed in the same manner and for the same purposes, and such district and the directors and officers thereof shall be subject to the same requirements, as may now or hereafter be provided by law in respect to the assessment and taxation of similar property owned, used, operated or controlled by private corporations or individuals for the purpose of furnishing electric power or energy or electric service to the public."

Before passing on to a consideration of several objections based upon constitutional principles, which are urged by the plaintiff against the validity of the assessments, we mention the fact that the statute just quoted authorized the assessment of only that part of the properties of people's utility districts that are used "for the production, transmission, distribution

or furnishing of electric power'' whereas Oregon Laws 1939, ch 343, § 1, subd 14, authorizes the assessment ''of the property having a situs in this state, as hereinafter defined, of all &ast; &ast; &ast; people's utility districts &ast; &ast; &ast;''

On cross-appeal from the ruling that the 1951, 1952 and 1953 assessments of its property were valid, plaintiff argues that the legislature had no power to tax people's utility districts and that, in any event, the tax violates the requirements for uniformity that are made by Oregon Constitution, Art I, § 32, and Art IX, § 1.

■ Plaintiff first contends that there is an implied prohibition on the power of the legislature to tax people's utility districts to be found in the final paragraph of the people's utility district amendment to the Oregon Constitution, Art XI, § 12, which reads:

"The legislative assembly shall and the people may provide any legislation, that may be necessary, in addition to existing laws, to carry out the provisions of this section."

Plaintiff's position is that, rather than facilitating the constitutional purpose, the legislature has hampered it by "burdening" the operations of the districts with a tax. If the mere fact that the constitutional amendment does not mention the subject of taxes, the imposition of them, pursuant to Oregon Laws 1939, ch 343, § 1, subd 14, must be deemed an unauthorized "burden" upon the districts, then many other parts of Oregon Laws 1931, ch 279, must also be regarded as proscribed burdens. For example, Art XI, § 12, makes no intimation that the districts are suable, but § 29 of the 1931 act provides that the districts may sue and be sued. The necessity to defend a lawsuit may be a

more grievous burden than the payment of taxes. If the district has defaulted in the payment of a bond issue, the amount sought in an action brought by the bondholders may be far greater than the amount of any tax levied pursuant to the legislation under scrutiny. The 1931 act contains many provisions unmentioned in the constitution which cast upon the district "burdens" similar to those resulting from the fact that they may be taxed and sued. For instance, § 50 subjects the districts to the laws which regulate minimum wages and their payment. Another section prescribes the manner in which the districts must proceed in order to acquire the right to use unappropriated waters. In fact, virtually every section of the sixty-one which comprise the 1939 enactment imposes a "burden", if the subjection of the districts to the general laws of the state must be deemed one. Oregon Laws 1939, ch 387, §§ 11, 12, 13, 14 and 15, make provision for the dissolution of a district—which surely is a burden if the payment of taxes is one.

■ The payment of taxes is an obligation which none welcomes, yet all who live in organized society must discharge that duty. The payment of taxes imposed by the chosen representatives of the people can no more be deemed a burden than payment for one's food, shelter and clothing. Generally, if a suggested interpretation would lead to unreasonable results, the courts will reject it. *Peters v. McKay,* 195 Or 412, 238 P2d 225, 246 P2d 585; *State ex rel. v. Dobson,* 169 Or 546, 130 P2d 939.

■ The language which we quoted from Art XI, § 12, is a recognition that the amendment is not self-executing. (See concurring opinion of BELT, J., in *Board of Directors of Northern Wasco County People's Utility District v. Kelly,* 171 Or 691, 137 P2d 295).

When the draftsmen of Art XI, § 12, sought to make provision that legislation would be written whereby people's utility districts could be organized, it was necessary to express somehow that prime purpose. Words were the only medium available to the draftsmen for the expression of their purpose. They chose the words "that may be necessary * * * to carry out the provisions of this section." The plaintiff interprets those words as the imposition of a restriction upon the legislature and as signifying that the districts formed under the constitutional amendment possess such high rank among municipalities that they are beyond the reach of the legislature when it seeks to force them to contribute their fair share to the upkeep of government. It is our belief that the words were employed, not as fetters for the legislature, but as enabling provisions; that is, they enable the legislature to make provision for people's utility districts and enable the people to organize such districts after the legislature has written the needed legislation. To interpret the provision as forever barring the legislature from imposing a tax on people's utility districts would be an unjustifiable gloss on the text of the constitution.

Further aid may be gained from the fact, already mentioned, that Art XI, § 12, is not self-executing. The legislature could not have been compelled to pass any legislation pursuant to Art XI, § 12, and, thus, it could have prevented the formation of people's utility districts entirely. To say that once it had created them according to the constitutional mold, it subsequently burdened them, the objects of its own creation, would be an imposition upon the wide scope of legislative action heretofore recognized by this court. See *State v. School District No. 3*, 78 Or 188, 152 P 221.

■ In addition, it cannot be said that the language in question grants people's utility districts a greater exemption from taxation than that accorded to other municipal corporations by the public policy of this state. That being so, it has long been held that the property of municipal corporations may be taxed if the legislature specifically so provides. *State v. Preston*, 103 Or 631, 206 P 304; *City of Portland v. Welch*, 126 Or 293, 269 P 868; *City of Portland v. Multnomah County*, 135 Or 469, 296 P 48; *Security Savings and Trust Co. v. Lane County*, 152 Or 108, 53 P2d 33. Had it been the intention of the drafters of Art XI, § 12, to place people's utility districts in a more favored position with respect to taxation than cities and other municipal corporations, the intention would have been explicitly set out.

■ For like reasons, plaintiff's second argument fails. Subsection 3, § 2, ch 395, Oregon Laws 1949, provides for tax exemptions for the following property:

"All public or corporate property of    *    *    * all other public or municipal corporations in this state used or intended for corporate purposes *    *    *."

These provisions are enunciatory of a policy long recognized by this court; that is, that property belonging to a municipal or public corporation and being used for governmental purposes is not taxable under a general taxing statute, but must be taxed by specific legislation. *State v. Preston*, supra. It cannot be said, therefore, that such a statute repeals earlier enactments which provide for the levying of taxes on a specific public or municipal corporation. This conclusion is supported by the well known principle of statutory construction that a specific statute will not be considered repealed by a subsequent statute, gen-

eral in its terms. *Home Telephone Co. v. Moodie*, 75 Or 117, 145 P 635.

▮▮▮▮▮ Having decided that the legislature had the power to enact the tax statutes under consideration, it must next be determined whether the enactments comply with the restrictions on the legislative power found in Art I, § 32, and Art IX, § 1, of the Oregon Constitution. Those provisions read:

"* * * all taxation shall be uniform on the same class of subjects within the territorial limits of the authority levying the tax."

"The legislative assembly shall, and the people through the initiative may, provide by law uniform rules of assessment and taxation. All taxes shall be levied and collected under general laws operating uniformly throughout the State."

It is plaintiff's position that these provisions have been violated because "The property of a PUD is the only property in Oregon of any municipality or public corporation dedicated to a public purpose which is subject to ad valorem property taxation." It must be remembered, however, that the power of the legislature to classify and sub-classify the subjects of taxation is very wide. As was said in *Standard Lumber Co. v. Pierce*, 112 Or 314, 228 P 812:

"Any classification, * * *, is permissible which has a reasonable relation to some permitted end of governmental action, and it is not necessary that the basis of the classification must be deducible from the nature of the things classified; it is enough if the classification is reasonably founded within the purpose and policy of taxation, and, if some real and substantial distinction is present, a classification based thereon is reasonable if made with respect to the kind of property or the amount or value of the property or the character of the taxpayers subjected to the tax."

To like effect, see *State v. Kozer,* 116 Or 581, 242 P 621; and *Portland Van & Storage Co. v. Hoss,* 139 Or 434, 9 P2d 122.

Keeping in mind that it is not the function of this court to pass upon the wisdom of the legislature in making its classification, but solely to determine whether or not the classification has a reasonable basis, two of the possible bases for the enactments under attack will be suggested. The first is that people's utility districts have as their primary province the furnishing of utility services, in this case electricity. Those municipalities which operate power plants do so, on the other hand, as an incident to their main function of operating a local governmental structure. Another factor settles around the use to which the electric power is put. Although both people's utility districts and municipalities provide service to paying customers, municipalities provide power for themselves to assist in their own operations, such as lighting streets and illuminating and providing power for municipal buildings.

We are satisfied that the statutes subjecting the property of people's utility districts to taxation are not arbitrary and unreasonable. We believe that they are valid and free from constitutional infirmities.

The above disposes of the contentions submitted by the parties. The validity of the challenged taxes is sustained. Costs will not be allowed.

Affirmed in part.

Reversed in part.