Argued November 2, disallowed in part December 9, 1970

NIELSON, *Petitioner, v.* BRYSON,
*Respondent.*

477 P2d 714

*Raymond J. Conboy*, Portland, argued the cause for petitioner. With him on the brief were Pozzi, Wilson & Atchison and Donald N. Atchison, Portland.

*Richard S. Borst*, Portland, argued the cause for defendant. With him on the brief were McColloch, Dezendorf, Spears & Lubersky and Laurence F. Janssen, Portland.

Before O'CONNELL, Chief Justice, and McALLISTER, DENECKE, HOLMAN, TONGUE, HOWELL and SCHWAB, Justices.

TONGUE, J.

This is an original proceeding in mandamus to set aside an order issued by respondent, as a circuit judge, requiring that the medical records custodians of the doctors for the plaintiff in a personal injury case appear for depositions to be taken by attorneys for the defendant in that case and produce the medical records relating to plaintiff for examination. The order also required the custodian of the hospital in which plaintiff had been treated to appear and produce the hospital medical records relating to plaintiff. The order was issued after plaintiff's motion to quash notices of the depositions had been sustained

by another circuit judge and after defendant had filed a motion for reconsideration of that order, which was allowed by respondent.

Plaintiff, as the petitioner in these proceedings, contends that ORS 44.040 (1)(d), (which provides that "a regular physician or surgeon shall not, without the consent of his patient, be examined in a civil action, suit or proceeding, as to any information acquired in attending the patient, which was necessary to enable him to prescribe or act for the patient") includes "information" recorded on medical records within that privilege. Plaintiff also contends that consent to examine such records is not deemed to have been given by the mere filing of an action for personal injuries, but only if and when the patient, as a party to such an action, "offers himself as a witness," as provided by ORS 44.040 (2).

In addition, plaintiff contends, with reference to production of the hospital records, that although ORS 441.510 purports to permit the examination of such records by "any party legally liable or against whom a claim is asserted for compensation or damages for injuries," that section of what was originally Oregon Laws 1931, ch 400, is invalid for violation of Oregon Constitution, Art. IV, § 20, which requires that "every Act shall embrace but one subject, and matters properly connected therewith, which subject shall be expressed in the title."

On behalf of respondent it is contended, to the contrary, that ORS 44.040, as a "privilege statute," should be strictly construed as contrary to the "favored policy" of pretrial discovery of all relevant evidence and that the patient-physician privilege is waived when an action is filed by the patient to recover for personal injuries.

It is also contended on behalf of respondent that ORS 441.510 not only expressly provides for the examination of hospital records in such a case, but is sufficiently "germane" to the subject matter of Oregon Laws 1931, ch 400, so as not to be invalid.

I. *By the express terms of ORS 44.040 (2) the physician-patient privilege is not waived unless and until the patient, as a party to an action, offers himself as a witness.*

The privilege of communications between physician and patient did not exist at common law and when that privilege exists it is a creature of statute.[1] In Oregon, by a statute originally enacted in 1862, it is provided that "there are particular relations in which it is the policy of the law to encourage confidence," including the relationship between "a regular physician or surgeon" and his patient. General Laws of Oregon 1845-1864 (Deady), ch 8, now ORS 44.040 (1)(d). This case presents the question whether, and under what circumstances, the "privilege" conferred by the terms of that statute may be waived by the patient, or be deemed to have been waived by him.

Petitioner does not take issue with contention of respondent that it is now the "favored policy" to encourage or require the pretrial discovery of all relevant evidence and that statutes providing for various privileged and confidential communications and records are in derogation of the common law and should be strictly construed. See 8 Wigmore, Evidence (3d ed), §§ 2380 and 2380a. Neither does petitioner disagree with cases in which it has been held by the courts, under different statutory provisions, that a patient who files an action for personal injuries

---

[1] See 24 ALR2d 1196 (Anno).

waives the physician-patient privilege by the act of filing such an action. See 21 ALR3d 912 (Anno).

Petitioner contends, however, that in Oregon, as in some other states, the conditions of waiver are "spelled out" by the terms of a statute which expressly provides that the privilege of confidential communication between physician and patient shall be terminated if the patient, as "a party to an action, suit or proceeding offers himself as a witness." (ORS 44.040 (2)).

■ A person "offer(s) himself as a witness" by the act of voluntarily offering testimony as a witness either on trial or on deposition, rather than by the act of either filing an action for personal injuries or verifying a written complaint in such an action. Neither does a person "offer himself as a witness" when called involuntarily to testify on trial or on deposition. *Reynolds Metals Company v. Yturbide*, 258 F2d 321 (CA 9, 1958), affirming *Martin v. Reynolds Metals Company*, 135 FS 379 (D Or 1952).

In some states it has been proposed that an "accelerated waiver" of the physician-patient privilege be enforced by the courts in personal injury cases by refusing to docket such cases for trial unless and until the plaintiff has agreed to waive the privilege for purposes of pretrial discovery. "Accelerated Waiver of the Physician-Patient Privilege," 42 Wash L Rev 1107. See also *Mariner v. Great Lakes Dredge & Dock Co.*, 202 FS 430, 434 (ND Ohio 1962). Such proposals, however, are directly contrary to the clear provisions of ORS 44.040 (2).

We think that it would be equally strained to hold, as apparently held by the respondent in this case,

that although the *testimony* of the plaintiff's physician cannot be taken by the defendant's attorneys in a personal injury case, either by deposition or on trial, unless the plaintiff has first "offer(ed) himself as a witness," defendant's attorneys can nevertheless require production of the physician's *medical records* for examination.

The privilege provided by ORS 44.040 (1)(d) expressly extends to "any information acquired in attending the patient." We cannot believe that the legislature could have intended to prohibit only the oral examination of a physician for such information as he might remember and permit the examination of the physician's records in which such information would normally be recorded. That such a result could not have been reasonably intended is also clear when it is recognized that to so hold would be to completely remove all privilege and confidence from all medical records, regardless of whether or not the patient files an action for personal injuries and not only after, but also before the filing of such an action.

■ Accordingly, we feel constrained to hold that in the absence of an intentional and expressed consent, the privilege created by ORS 44.040 (1)(d) relating to confidential communications between physician and patient can only be terminated in the manner provided by the terms of ORS 44.040 (2) or by the terms of some other statute. Since no other statute provides for the waiver or termination of the privilege of confidential communications between physician and patient, including the "information acquired in attending the patient," as recorded in the medical records of the physician, we hold that it has not been waived or terminated in this case. It follows that the order by

respondent must be set aside insofar as it would require either petitioner's doctors or their medical records custodians to appear for deposition or to produce for examination the doctor's medical records relating to the petitioner.

We agree that insofar as ORS 44.040 (2) imposes restrictions beyond the date of the filing of an action by the patient to recover for personal injuries, its provisions are contrary to the "favored policy" of pretrial discovery of all relevant evidence. As previously stated, however, the privilege for confidential communications between physician and patient is not a court-made rule, but is solely a creature of statute. Thus, if such a policy is to be adopted and made effective in Oregon in personal injury cases, to replace the limitations now imposed by ORS 44.040(2), such a change can be made only by the legislature, rather than by the courts.

II. *ORS 441.510 is not unconstitutional and permits examination of hospital records.*

ORS 441.510 provides that any party against whom a claim is asserted for damages for personal injuries may examine and make copies of hospital records relating to the injured person. It was enacted as Section 5 of Oregon Laws 1931, ch. 400. That statute, according to its title, was an act "providing that hospitals shall be entitled to liens for hospitalization."

Petitioner contends that ORS 441.510, as section 5 of that original statute, is invalid for lack of conformity with the requirements of Art IV, § 20, of the Oregon Constitution, which provides that:

"Every Act shall embrace but one subject, and matters properly connected therewith, which subject shall be expressed in the title. But if any subject shall be embraced in an Act which shall

not be expressed in the title, such Act shall be void only as to so much thereof as shall not be expressed in the title. \* \* \*"

In *Eastman v. Jennings-McRae Logging Co.,* 69 Or 1, 138 P 216 (1914), one of the leading cases under this constitutional provision, the following test was stated by this court, at pp 10-11:

"\* \* \* It is the *subject* of the act, and not 'the matters properly connected therewith,' that shall be expressed in the title.

"\* \* \*

"\* \* \* All that is necessary is that the act should embrace *one general subject*; and by this is meant merely that *all matters treated should fall under some one general idea,* be so connected with or related to each other, either logically or in popular understanding, as to be parts of, *or germane to, one general subject.*" (Emphasis added)

To the same effect, but in more detail, this court said in the earlier case of *State v. Shaw,* 22 Or 287, 29 P 1028 (1892), at pp 288-89:

"\* \* \* It (Article IV, § 20) was intended to prevent the practice, common in legislative bodies not thus restricted, of embracing in the bill matters having *no relation to each other, wholly incongruous,* and of which the title gives no notice, thus securing the adoption of measures by fraud and without attracting attention; or combining subjects representing diverse interests, in order to unite the members of the legislature who favored either, in support of all. \* \* \* A disregard of this constitutional provision will be fatal, but the *departure must be plain and manifest,* and all doubts will be resolved in favor of the law. \* \* \*

"If all the provisions of the law *relate directly or indirectly to the same subject. are naturally connected, and are not foreign to the subject expressed in the title,* they will not be held unconsti-

tutional as in violation of this clause of the constitution. [Citing cases] This clause is not violated by any legislative act having various details properly *pertinent and germane to one general object.* \* \* \*" (Emphasis added)

Thus, as subsequently held in *Clayton v. Enterprise Electric Co.*, 82 Or 149, 161 P 411 (1916), at pp 156-57:

"\* \* \* In order to render a portion of a statute invalid for the reason that its provisions are not embraced within the title of the act in conformity with Article IV, Section 20, of the Constitution, such provisions must be *entirely disconnected with the subject* as embraced in the title, *wholly incongruous*, and consist of matter of which the title gives no notice, so that the adoption of such measure by means of the title would be fraudulent.

"The presumption is always in favor of the validity of a statute, and its repugnancy to the Constitution must clearly appear. If the matter is *reasonably connected with and germane to* the title under our Constitution requiring an act to embrace but one subject and matters connected therewith, which subject must be embraced in the title, the law will be upheld; \* \* \*" (Emphasis added)

More recently, in *Miles et al v. Veatch et al*, 189 Or 506, 220 P2d 511, 221 P2d 905 (1950), we said, at p 528:

"It has been well said that the constitutional provision 'was not imposed to hamper or impede the legislative process', nor 'designed as a loophole of escape from, or a means for the destruction of legitimate enactments.' Sutherland, *op. cit.*, Sec. 1702. One of the principal objects was 'to prevent the combining of *incongruous matters and objects totally distinct* and *having no connection nor relation with each other* in one and the same bill'." (Emphasis added)

Cases cited by petitioner do not state a contrary rule, since they also recognize the test to be whether the statutory provision under attack is *"in any degree germane* to the title of the act of which it is a part" (*Korth v. The City of Portland*, 123 Or 180, 190, 261 P 895), or is "not within the scope of the title of the act or *in any way germane* to it." (*State v. Beaver Portland Cement Co.*, 169 Or 1, 13, 124 P2d 524.)[2]

Turning now to an application of these tests and standards to ORS 441.510, as Section 5 of the Oregon Laws 1931, ch 400. As previously stated, the title of that act is as follows:

"Providing that hospitals shall be entitled to liens for hospitalization rendered in certain cases and providing means for perfecting said liens and giving notice of lien."

Section 1 of that act provides that:

"Whenever any person shall receive hospitalization on account of any injury and such injured person *shall claim damages from the party causing the injury,* such hospital shall have a lien upon any sum awarded the injured person * * *." (Emphasis added)

Section 3 provides for a similar lien "in the event that such injured person receiving hospitalization shall have a contract providing for indemnity or compensation * * *."

These are the two basic substantive provisions

[2] Bland v. The Alsea Bay Port Commission, 243 Or 541, 414 P2d 814 (1966); Northern Wasco County People's Utility District v. Wasco County, 210 Or 1, 305 P2d 766 (1957); and State v. Levy, 76 Or 63, 147 P 919 (1915), also cited by petitioner, do not state a contrary rule.

of the act, except for provisions establishing procedures for the perfection of such liens (sections 2, 6 and 7) and a provision limiting the application of such liens in certain cases (section 4).

Then follows section 5 (now ORS 441.510), as follows:

> "*Any party* legally liable or *against whom a claim shall be asserted for compensation or damages* for such injuries shall have a right to examine and make copies of all records of any hospital in reference to and connected with such hospitalization of such injured person." (Emphasis added)

Thus, the act not only gives to hospitals a lien on claims of patients for damages for personal injuries, but also provides that the party subject to such a claim shall have the right to examine the hospital records for the patient making such a claim.

While it may be that there is no *necessary* relation between these two provisions, we cannot say that they are either "incongruous matters" or "objects totally distinct and having *no* connection nor relation with each other," to apply the test of *Miles v. Veatch, supra.* (See also *Clayton v. Enterprise Electric Co., supra.*)

Neither can we say that a provision in a lien statute which creates a new lien and confers upon the party subject to a lienable claim the right to examine records which relate to the basis for such a claim is not "in any way germane" to the subject of such a lien statute, to apply the test as stated in the cases cited by petitioner. (See also *State v. Shaw, supra,*

and *Eastman v. Jennings-McRae Logging Co., supra.*)[9]

■ On the contrary, and giving to this statute the benefit of the presumption that is always in favor of the validity of a statute, we conclude that the provisions of section 5 (now ORS 441.510) were "reasonably connected with and germane to" the subject matter and title of Oregon Laws 1931, ch 400, and that ORS 441.510 is not invalid for violation of the Oregon Constitution, Art IV, § 20.

It follows that since the privilege of confidential communications between physician and patient, as previously provided by ORS 44.040, is a statutory privilege, the legislature could subsequently limit the application of that privilege by providing that hospital records for patients who make claims for personal injuries are subject to examination even though such records may include information which would otherwise be privileged.

It also follows that respondent correctly ordered the medical records custodian of Portland Adventist Hospital to appear for deposition in this matter and to produce all medical records relating to the claim of petitioner in the case of *Nielson v. Rae* in the circuit court for Multnomah county, No. 343-869, for examination by defendant's attorneys in that case. The order in that case must be set aside, however, insofar as it would require either plaintiff's physicians or

---

[9] Petitioner points out that ORS 441.510 does not require that a hospital lien be perfected as a condition of the right to examine hospital records. Even in the absence of such a requirement, however, we cannot say that a provision giving one subject to a potential lien the right to examine records on which such a lien may be based is not "in any way germane" to the subject of such a lien statute.

their medical records custodians to appear for depositions or to produce medical records for examination and the notices of such depositions must be quashed.

The respondent in these proceedings is no longer presiding judge of the circuit court for Multnomah county and there has been no substitution of parties. These proceedings, however, are directed against the office of the presiding judge of the circuit court for Multnomah county rather than against respondent as an individual. The peremptory writ shall thus issue accordingly.

Costs to neither party.

DENECKE, J., specially concurring.

No issue was raised about the propriety of the use of mandamus to review the trial court's orders. Nevertheless, a comment might be necessary because of our recent decisions in which the issue was raised and discussed. In *Henkel v. Bradshaw,* 257 Or 55, 475 P2d 75 (1970), and *State ex rel Maizels v. Juba,* 254 Or 323, 460 P2d 850 (1969), this court refused to issue a peremptory writ of mandamus upon the ground that appeal was a speedy and adequate remedy. In the instant case this is not true. If final judgment was entered for the defendant and the plaintiff appealed and assigned as error the trial court's discovery orders, the trial court's ruling, whether incorrect or not, probably would not be reversible. This court could not determine whether the trial court's rulings, erroneous or not, were prejudicial to the plaintiff and, therefore, its rulings could not constitute reversible error. For this reason review by appeal after final judgment rather than by mandamus would not be adequate.