Argued and submitted September 26, 1995, Sections 1 to 17 of SB 1156 declared void
January 19, 1996

Don McINTIRE
and Thomas P. DENNEHY,
*Petitioners,*

*v.*

Donald E. FORBES,
Director of the Oregon Department of Transportation,
and Jim Hill, State Treasurer,
*Respondents,*

*and*

TRI-COUNTY METROPOLITAN
TRANSPORTATION DISTRICT OF OREGON
and Donald Dale Sloyer,
*Intervenors.*

(SC S42561)

909 P2d 846

Gregory W. Byrne, of Byrne & Barrow, Portland, argued the cause and filed the briefs for petitioners and filed a motion for intervenor Donald Dale Sloyer in support of petitioners.

Michael D. Reynolds, Assistant Attorney General, Salem, argued the cause for respondents. With him on the brief were Theodore R. Kulongoski, Attorney General, and Virginia L. Linder, Solicitor General.

Charles F. Hinkle, Portland, argued the cause and filed the brief for intervenor Tri-County Metropolitan Transportation District.

Edward H. Trompke, Portland, filed the brief on behalf of *amicus curiae* Robert Tiernan.

GRABER, J.

## GRABER, J.

Petitioners challenge the constitutionality of the light rail funding provisions of Senate Bill 1156 (SB 1156 or the Act), enacted by the Oregon legislature in special session in August 1995. They assert that sections 1 to 17 of the Act (the substantive provisions relating to light rail funding) are invalid for a number of reasons. We conclude that sections 1 to 17 of the Act are invalid because the legislative act in which they are contained violates the "one-subject" requirement of Article IV, section 20, of the Oregon Constitution.

## I. JURISDICTION OF THE COURT

■ Intervenor[1] raises certain threshold issues. Concerning jurisdiction, intervenor asserts that the statutory grant to this court of exclusive and original jurisdiction does not, by its terms, extend to a challenge made under Article IV, section 20.

Section 18 of SB 1156, the jurisdictional provision at issue, provides:

"(1) Notwithstanding ORS chapters 28 and 34, ORS 183.400 to 183.484 or any other provision of law, exclusive jurisdiction for the determination of the constitutionality of any provision of sections 1 to 18 of this Act, including but not limited to the determination of whether the light rail lottery bonds authorized by sections 1 to 18 of this Act violate any provision of the Oregon Constitution, is conferred upon the Supreme Court.

"(2) Any interested person may petition the Supreme Court for a determination of the constitutionality of any provision of sections 1 to 18 of this Act, including but not limited to the determination of whether the light rail lottery bonds authorized by sections 1 to 18 of this Act violate any provision of the Oregon Constitution. Any such petition must be filed within 30 days after the effective date of sections 1 to 18 of this Act. The petition shall name the Director of the Department of Transportation as respondent. If the petition seeks a determination of whether the light rail lottery bonds authorized by sections 1 to 18 of this Act violate any provision of the Oregon Constitution, the

---

[1] Tri-County Metropolitan Transportation District of Oregon (Tri-Met), a regional entity with certain responsibilities for light rail, moved to intervene, and the court granted the intervention. Respondents are the Director of the Oregon Department of Transportation and the State Treasurer.

petition shall also name the State Treasurer as a respondent. The petition shall comply with the specifications for opening briefs set forth in the Oregon Rules of Appellate Procedure. Within 20 days following the filing of the petition, the respondents may file an answering brief, which shall comply with the specifications for answering briefs set forth in the Oregon Rules of Appellate Procedure. The Supreme Court may hear oral arguments and may provide by order for such hearings and filings as are reasonably necessary for the prompt disposition of the petition. The Supreme Court shall decide the matter with the greatest expediency."

We analyze the scope of a statutory grant of jurisdiction in the same manner as we analyze other statutes. We first examine the text and context of the provision to try to ascertain the intent of the legislature and, if the intent is clear from that inquiry, then we proceed no further. *PGE v. Bureau of Labor and Industries*, 317 Or 606, 610-11, 859 P2d 1143 (1993). We begin with the text, as the best evidence of the legislature's intent. *Id.* at 610.

Intervenor asserts that jurisdiction to determine the constitutionality "of any provision of sections 1 to 18" means that the court may not consider other provisions of the Act[2] in any way and, therefore, that the court may not consider constitutional contentions based on the title of the Act or on other provisions of the Act, to wit, the challenges brought here pursuant to Article IV, section 20.

Contrary to intervenor's position, the text of section 18 contemplates an unlimited range of state constitutional challenges to sections 1 to 17. The grant of jurisdiction is extended to determine "*the* constitutionality" of any provision of sections 1 to 18. (Emphasis added.) Use of the definite article connotes a single, all-encompassing inquiry into the measure's constitutionality. Moreover, at three different times, section 18 speaks of the types of claims that may be brought to determine constitutionality, including *but not as being limited to* challenges to the light rail lottery bonds. The

---

[2] Sections 1 to 17 of the Act concern funding and land use procedures for light rail. Additional sections of the Act concern card-lock service stations, land use, animal feeding, pesticides, timber harvesting, shooting ranges, and salmon.

text of section 18 thus is inclusive, not exclusive, with no limits stated.

An inquiry into the context of the jurisdictional provision in section 18 also is instructive. Under this court's methodology, such an inquiry includes review of other sections of the same Act. *See State ex rel Hall v. Riggs*, 319 Or 282, 287-89, 877 P2d 56 (1994) (illustrating principle). Section 1(1)(h) of the Act provides:

> "In the autumn of 1995, the Congress of the United States will commence its legislative process for authorizing various mass transit projects throughout the nation, including the South North Line [of the light rail]. In order to be in a position to obtain the needed commitment of federal matching funds for the South North Line, it is necessary for this state to provide, prior to the commencement of such federal legislative process, for the commitment of the state lottery funds needed for this state's share of the costs of the South North Line *and to make provision for the prompt final judicial resolution of all constitutional challenges to sections 1 to 18 of this Act.*" (Emphasis added.)

The import of that section is that the legislature intended that *all* kinds of state constitutional challenges to the substantive light rail funding provisions be resolved promptly and finally, in order to facilitate the acquisition of federal funds. *See also id.* at § 18 (singling out claims challenging the light rail funding provisions for direct review and requiring this court to "decide the matter with the greatest expediency").[3]

■ The text and context of section 18 manifest a clear legislative intent to facilitate the prompt and complete resolution by this court of all potential constitutional challenges to the light rail funding provisions of the Act. We conclude that this court has jurisdiction to consider petitioners' constitutional challenges to the light rail funding provisions of the Act, based on Article IV, section 20.[4]

---

[3] The words of the legislature are the best indicator of the legislature's intent. Nonetheless, we shall assume that, in context, section 18 states a legislative directive that we shall decide the matter expeditiously, not expediently.

[4] Whatever the outcome on the merits of the "one-subject" challenge, this court has statutory jurisdiction under section 18 of SB 1156. That is so because section 18 is a purely procedural provision, one that simply establishes a mechanism for judicial review of the substance of the light rail provisions of the Act. It is

## II. STANDING AND JUSTICIABILITY

Intervenor also questions petitioners' standing to bring this action and the justiciability of this case.

### A. *Statutory Standing.*

Section 18(2) of SB 1156 provides in part:

"Any interested person may petition the Supreme Court for a determination of the constitutionality of any provision of sections 1 to 18 of this Act * * *."

The question of petitioners' standing to bring this action is a matter of statutory interpretation, to construe and apply the term "any interested person." As with the determination of the scope of this court's statutory original jurisdiction, we first examine the text and context of section 18(2) to ascertain the legislature's intent in its grant of standing.

■ The text does not define the terms "any interested person" or "interested." This court typically will give words of common usage their "plain, natural, and ordinary meaning." *PGE*, 317 Or at 611. "Interested" is pertinently defined as "having a share or concern in some affair or project: liable to be affected or prejudiced." *Webster's Third New Int'l Dictionary*, 1178 (1993).

Analysis of text also includes reference to well-established legal meanings for terms that the legislature has used. *See Ester v. City of Monmouth*, 322 Or 1, 9, 903 P2d 344 (1995) (using that principle to interpret the text of a constitutional initiative). "Interested" also can be a word with a well-established legal meaning. With respect to actions brought by taxpayers in Oregon to challenge legislation that involves expenditures of public funds, this court has held that a taxpayer is "beneficially interested" in the matter and has standing, if the taxpayer can show that her or his tax burden will be or is likely to be increased by operation of the law. *See State ex rel Kane v. Goldschmidt*, 308 Or 573, 578-79, 783

---

severable from that substance. We also note that, when the court must consider the merits of the case to determine an attack on its jurisdiction, the court has jurisdiction to proceed to a decision on those merits. *See, e.g., Bell v. Hood*, 327 US 678, 682-85, 66 S Ct 773, 90 L Ed 939 (1946) (illustrating principle); *Thornhill Pub. v. General Telephone & Electronics*, 594 F2d 730, 733-34 (9th Cir 1979) (so holding); *Graham v. Lloyd's of London*, 296 SC 249, 258, 371 SE2d 801 (1988) (so holding).

P2d 988 (1989) (taxpayer had standing to bring a mandamus action challenging a law that authorized the state to enter into certain financing agreements); *see also Savage v. Munn,* 317 Or 283, 289, 856 P2d 298 (1993) (taxpayer standing depends "on allegations that the challenged governmental action had actual or potential adverse fiscal consequences" (quoting *Gruber v. Lincoln Hospital District,* 285 Or 3, 8, 588 P2d 1281 (1979))). The term "any interested person," which appears in the Act before us, is not the same as the term "beneficially interested," which this court construed in *Kane.* However, the term "any interested person" is at least as broad as (if not broader than) the term "beneficially interested."

The context of the standing provision in SB 1156 supports at least as broad a definition as the one that the foregoing cases apply to the term "beneficially interested" person. Just as with the preceding inquiry into the context of the grant of jurisdictional authority, the context for this provision reveals that the legislature was bent on facilitating prompt and complete challenges to the light rail funding provisions of the Act, so that funding for the project could be sought without having a legal cloud hanging over the process. A broad grant of standing is consistent with that purpose and is consistent with the broadly worded statutory text.

■ In the present case, we need go no further than the text and context of section 18(2) of the Act. The term "any interested person" at least includes a taxpayer whose tax burden will be or is likely to be increased by operation of the Act.

B. *Each Petitioner Qualifies As An "Interested Person," With Standing.*

■ We now must determine whether petitioners have stated an interest in the matter that qualifies them as interested persons who may challenge SB 1156 in this proceeding. Petitioners have asserted in affidavits that they reside and own real property in Gresham, which is in Multnomah County and in the Tri-Met district. They assert that they use the streets, highways, and Tri-Met and that they regularly pay state income taxes.

Having so defined their status, petitioners assert that SB 1156 will affect them in several ways. Among other things, petitioners allege: If SB 1156 is deemed constitutional and federal funds are approved, (1) petitioners will have to pay property taxes to retire the general obligation bonds that would be issued by Tri-Met; (2) funds will be diverted from Tri-Met capital projects, which would benefit petitioners, to the Transportation Equity Account for use outside the Portland metropolitan area; (3) appropriations will be made, if necessary, from the state's general fund to accumulate $375 million for distribution to the cities and counties; and (4) Tri-Met and other local governmental entities are obliged to pay $2 million in lottery proceeds distributed to them into the Transportation Equity Account for use elsewhere, depriving petitioners of the benefits of those monies.

Based on the foregoing assertions, we conclude that each petitioner has stated an adequate interest in the matter to qualify as an "interested person" authorized to bring a claim in this proceeding.

C. *Justiciability.*

There are two aspects to the analysis of justiciability in this case. The first relates to the standing inquiry: will a decision have a practical effect on the rights of the parties? The second relates to ripeness: is this case brought prematurely?

1. *Practical Effect on the Rights of the Parties.*

This court recently has reiterated the standard for a justiciable controversy under Oregon law:

"Under Oregon law, a justiciable controversy exists when 'the interests of the parties to the action are adverse' and 'the court's decision in the matter will have some practical effect on the rights of the parties to the controversy.' *Brumnett v. PSRB*, 315 Or 402, 405-06, 848 P2d 1194 (1993)." *Barcik v. Kubiaczyk*, 321 Or 174, 182, 895 P2d 765 (1995).

Petitioners' interests in this case patently are adverse to those of respondents and intervenor.[5] As discussed more

---

[5] This is not a situation like the one that the court confronted in *Oregon Medical Assn. v. Rawls*, 276 Or 1101, 557 P2d 664 (1976). There, the parties came

fully elsewhere, a decision by the court will have a practical effect on the rights of the parties. Petitioners' claims are, therefore, justiciable.

## 2. *Ripeness.*

■ The next inquiry is whether the present case is brought prematurely. The operation of sections 1 to 17 of SB 1156 is, by its terms, contingent on the commitment of federal funds; such funds may or may not be committed. That uncertainty, however, does not prevent ripeness for decision.

■ For a claim to be justiciable, "[t]he controversy must involve present facts as opposed to a dispute which is based on future events of a hypothetical issue." *Brown v. Oregon State Bar*, 293 Or 446, 449, 648 P2d 1289 (1982). Here, the Act provides the state with immediate authority to establish a state revenue bond program and to commit state funds, including lottery funds, needed for the state's share of the costs of the light rail project. The latter is a statutory commitment that the legislature has stated is a needed prerequisite even *before* the commencement of the federal legislative process for seeking federal "matching" funds. SB 1156, §§ 1(1)(h) and (2).[6]

Although the commitment by the federal government of "matching" funds is necessary for the project to be built, the very concept of the match here presupposes an existing and viable state commitment of funds, a point that is recognized expressly in sections 1 and 2 of the Act. The Act *presently* establishes by legislation that state commitment of funds. It also provides the mechanisms for the funding. If either the commitment of money by the state to the project, or the mechanism selected for funding it, is not valid, such a resolution of the controversy would have a real effect on the parties, because it would lead to the removal of the predicate

---

to the court seeking a declaration, without a concrete controversy or palpably adverse interests. In that situation, this court concluded that the case was not justiciable. 276 Or at 1105.

[6] Section 1(1)(h) of SB 1156 is quoted above, 322 Or at 430. Section 1(2) provides in part:

"*The Legislative Assembly declares that the purpose of sections 1 to 18 of this Act is to establish a state revenue bond program to provide the state's share of the cost of the South North Line.*" (Emphasis added.)

legislative commitment of state funds that is necessary before the state can try to secure federal funds. The possibility of the foregoing resolution makes this a current controversy, ripe for adjudication.

In addition, the Act establishes *now* in the State Treasury two Funds, the "South North Construction Fund" and the "Light Rail Bond Fund," separate and distinct from the General Fund. *Id.* at §§ 3(1) and 6(1). The Act further provides that the Department of Transportation may deduct from the construction fund the costs associated with administering those two funds. *Id.* at § 3(8). If the funding provisions of the Act are invalid, then those designated Funds would be affected. Again, that presents an actual *current* controversy. This case is ripe.

We conclude that this case is justiciable. We turn now to consider the merits of petitioners' challenges under Article IV, section 20.

### III. METHOD OF ANALYSIS UNDER ARTICLE IV, SECTION 20

Article IV, section 20, of the Oregon Constitution, provides in part:

"Every Act shall embrace but one subject, and matters properly connected therewith, which subject shall be expressed in the title. But if any subject shall be embraced in an Act which shall not be expressed in the title, such Act shall be void only as to so much thereof as shall not be expressed in the title."[7]

Petitioners assert that SB 1156 is void, because SB 1156 contains more than one subject and because its title does not express a subject. Respondents counter that the scope of the legislature's authority in those regards essentially is unrestricted and thus not subject to judicial review. Respondents also contend that the legislature expressed a subject in the title for SB 1156 and that all provisions of the Act fall within the title.

Intervenor agrees with respondents' positions and takes them one step further. Intervenor contends that Article

---

[7] The first sentence of Article IV, section 20, is sometimes referred to as a "single subject" or "one subject" requirement.

IV, section 20, does not authorize the courts to review legislative acts for compliance therewith. We turn first to intervenor's assertion.

A. *This Court's Authority to Enforce Article IV, Section 20.*

■ In analyzing a provision of the Oregon Constitution, we consider "[i]ts specific wording, the case law surrounding it, and the historical circumstances that led to its creation." *Priest v. Pearce*, 314 Or 411, 415-16, 840 P2d 65 (1992).

Turning first to the text, we note that the second sentence of Article IV, section 20, speaks to the consequences of having "any subject" in an act that is not expressed in the title; "such Act shall be void only as to so much thereof as shall not be expressed in the title." Although that sentence perhaps does not answer unambiguously intervenor's position that the courts have no role to play in adjudicating a challenge under Article IV, section 20, it goes a long way in that direction.

Whatever may be left open by the text, precedent has resolved. Case law firmly establishes that this court has authority to enforce Article IV, section 20. Indiana's one-subject constitutional provision was the verbatim antecedent of the Oregon constitutional provision. Charles Henry Carey, *The Oregon Constitution and Proceedings and Debates of the Constitutional Convention of 1857*, 471 (1926); W.C. Palmer, *The Sources of the Oregon Constitution*, 5 Or L Rev 200, 204 (1926). When the Oregon Constitution was adopted by the people of Oregon in 1857, it already was an established principle in Indiana that the one-subject requirement was mandatory, not directory, and was capable of enforcement by an action in court. *See The Indiana Central Railway Co. v. Potts*, 7 Ind 681, 683-84 (1856) (rejecting the contention that the provision is directory only and holding that the constitution "imposes upon the Court the obligation" of adjudicating the one-subject challenge under Article IV, section 19, of the Indiana Constitution); *Greencastle Township v. Black*, 5 Ind 557, 573 (1855) (holding that part of an act was "clearly in conflict with [the one-subject requirement] and void").[8]

---

[8] In *Priest*, 314 Or at 418, the court noted that decisions from the Indiana Supreme Court interpreting the Indiana Constitution of 1851 and that antedate the Oregon adoption of a cognate provision are relevant, because they "would have

Consistent with that established Indiana case law, the Oregon case law through the generations agrees, not merely by implication but by express statement, that this court has authority to adjudicate a one-subject challenge under Article IV, section 20, and to remedy a violation if one is found. *E.g., Nielson v. Bryson*, 257 Or 179, 186-87, 477 P2d 714 (1970); *Adm. Vets. Affairs v. U.S. Nat. Bank*, 191 Or 203, 212, 229 P2d 276 (1951); *Lovejoy v. Portland*, 95 Or 459, 466, 188 P 207 (1920); *Gantenbein v. West*, 74 Or 334, 339-40, 144 P 1171 (1914); *State of Oregon v. Shaw*, 22 Or 287, 289, 29 P 1028 (1892); *David v. Portland Water Committee*, 14 Or 98, 109, 12 P 174 (1886). Indeed, on *several* occasions, this court has *exercised* that authority and declared all or part of an act to be void for violation of Article IV, section 20. *See, e.g., Spaulding L. Co. v. Independence I. Co.*, 42 Or 394, 396-98, 71 P 132 (1903) (declaring entire act void); *Korth v. City of Portland et al.*, 123 Or 180, 189-90, 261 P 895 (1928) (declaring one provision of an act invalid).

■ The historical circumstances and purposes leading to Article IV, section 20, will be discussed below. Those circumstances and purposes do nothing to bring into question the conclusion derived from the text of the constitutional provision and from the case law, *viz.*: This court has authority to remedy a violation of Article IV, section 20.

B. *Method of Analyzing Petitioners' One-Subject Challenge.*

Having concluded that this court has authority to remedy a violation if one is found, we next describe the framework for deciding whether such a violation has occurred here. At the outset, we will be mindful of this court's caution:

> "The constitutional provision prohibiting a statute from containing more than one subject or object should not be technically, strictly, or narrowly, but reasonably, fairly, broadly, and liberally construed, with due regard to its purpose. It should not be so construed so as to hamper or cripple legislation, or render it oppressive or impracticable, by a strictness unnecessary to the accomplishment of the beneficial purpose for which it was adopted, or to make laws unnecessarily restrictive in their scope and operation, or to

informed the judgment of the [Oregon constitutional] convention in that regard." The *Indiana Central Railway* and *Greencastle* cases, decided in 1856 and 1855, respectively, fall within the proper window of time.

multiply the number of laws unnecessarily, or to promote controversy in regard to the validity of legislative enactments." *Garbade and Boynton v. City of Portland,* 188 Or 158, 166, 214 P2d 1000 (1950) (quoting 50 Am Jur, Statutes, § 194, p 175).

As noted above, when analyzing a constitutional provision, we consider its wording, the case law surrounding it, and the historical circumstances and purposes that led to its creation. Moving first to the text, the first sentence of Article IV, section 20, expressly mandates that "[e]very Act shall embrace but one subject, and matters properly connected therewith"; it requires that every act shall have a title; and it expressly requires that the one subject of the Act "shall be expressed in the title." The first sentence thus states separate requirements for the body of an act and the title of an act, and it also connects the two requirements by establishing a relationship between the body and the title.[9]

The second sentence, as noted previously, prescribes a consequence when all or part of the body of an act is not expressed in the title. An act "shall be void only as to so much thereof as shall not be expressed in the title." The second sentence thus expressly ties the title of an act to the one-subject requirement.

The content of Article IV, section 20, and the order in which it is written provide a framework for this court to follow: The provision sets distinct requirements for the body of an act, the title of the act, and the relationship between the body and the title. That framework is explicated by reference to the purposes of and history behind Article IV, section 20, and to this court's previous decisions, which we consider in turn.

■ The principal purpose for the *title* requirement of Article IV, section 20, is to provide fair notice to legislators (and to others) of the contents of a bill:

---

[9] *See generally* Carl H. Manson, *The Drafting of Statute Titles,* 10 Ind LJ 155, 156 (1934-35), recognizing that this type of constitutional provision, which most states had, "prescribes (1) A requisite of the body of each statute, (2) A requisite of the title of each statute, and (3) A relationship between the title and the body of each statute." Presently, 41 states, including Oregon, have such a constitutional provision.

"The constitutional restriction on titles of legislative acts was designed to prevent the use of the title as a means of deceiving members of the legislature and other interested persons as the bill moved through the legislative process. The restriction was intended to assure those who could not examine the body of the act itself that the act did not deal with more than its title disclosed." *Warren v. Marion County et al*, 222 Or 307, 321, 353 P2d 257 (1960).

*See also Clayton v. Enterprise Electric Co.*, 82 Or 149, 156-57, 161 P 411 (1916) (same); *Shaw*, 22 Or at 288 (same); *Simpson v. Bailey*, 3 Or 515, 517 (1869) (same); Walter Probert, *The Constitutional Restriction on Titles of Acts in Oregon*, 31 Or L Rev 111, 112 (1952) (same). Those persons who may wish to follow legislation as it moves through the legislative process may include members of the public, the Governor, local government officials, and others.

■■ The principal purpose for the one-subject requirement of Article IV, section 20, for the *body* of an act is to guard against logrolling. *Nielson* reiterates that "one of the principal objects was to 'prevent the combining of incongruous matters and objects totally distinct and having no connection nor relation with each other in one and the same bill.' " 257 Or at 187 (quoting *Miles et al v. Veatch et al*, 189 Or 506, 528, 220 P2d 511, 221 P2d 905 (1950) (emphasis in *Nielson* deleted)). *Nielson* also defines logrolling as "combining subjects representing diverse interests, in order to unite the members of the legislature who favored either, in support of all." *Nielson*, 257 Or at 186, quoting with approval from *Shaw*, 22 Or at 288. *See also* Probert, 31 Or L Rev at 113 (same; stating that the concern is more pronounced in earlier cases).[10]

---

[10] Article IV, section 20, also serves another function, which is related to that provision's two principal purposes: enabling the Governor to exercise the veto power as to distinct subjects. The title of an act gives the Governor, as well as legislators and others, notice of what a bill contains. Additionally, the one-subject requirement guards against the possibility that the Governor will sign a bill containing one subject as to which the Governor otherwise would exercise the veto power, when it contains another subject that the Governor supports. *See* Or Const Art V, § 15a, 15b (except as to appropriation bills and emergency clauses, as to which single-item veto is provided, the Governor may veto only an entire bill); *see also Johnson v. Walters*, 819 P2d 694, 697 (Okla 1991) (recognizing the connection between the veto power and the one-subject requirement in the Oklahoma Constitution); Millard H. Ruud, *"No Law Shall Embrace More than One Subject,"* 42 Minn L Rev 389, 391 (1958) (stating that the one-subject requirement prevents

The historical circumstances that led to the adoption of Article IV, section 20, and to provisions like it in most other states, confirm those two basic purposes: to provide notice and to inhibit logrolling. Carl H. Manson, *The Title-Body Clause Provisions of Our State Constitutions*, 12 Mich St BJ 236, 239-40 (1933); *Beebe v. The State*, 6 Ind 501, 553 (1855) (identifying those dual purposes as the historical origins for the Indiana constitutional provision).[11]

We turn next to the case law. The Oregon appellate courts have adjudicated at least 90 cases under Article IV, section 20, although none since 1970.[12] The cases are not always clear or consistent in analytical approach. However, several cases examine the body of an act, the title of the act, and the relationship between the body and the title.

This court's most recent decision, *Nielson*, held that ORS 441.510, providing for examination and copying of hospital records relating to the injured person in a personal injury claim, was valid as against a challenge under Article IV, section 20. 257 Or at 185-90. The legislature had enacted that statute as part of an act whose title was "providing that hospitals shall be entitled to liens for hospitalization." *Id.* at 188. *Nielson* illustrates the inquiry that the court undertakes when examining the body and the title of an act.

As to the body of an act, *Nielson*, 257 Or at 186-87, quotes from *Shaw*, 22 Or at 289:

"If all the provisions of the law relate directly or indirectly to the same subject, are naturally connected, and are

" 'riders' from being attached to bills that are popular and so certain of adoption that the rider will secure adoption not on its own merits, but on the merits of the measure to which it is attached"); Note, Deborah S. Bartell, *The Interplay Between the Gubernatorial Veto and the One-Subject Rule in Oklahoma*, 19 Okla City U L Rev 273, 286 (1994) ("[a] purpose of the one-subject rule is to prevent the legislature from circumventing the executive's veto power by placing unrelated items of legislation in a single bill").

[11] Other sources that discuss the historical forces underlying constitutional provisions of this kind include Probert, 31 Or L Rev 111; Manson, 10 Ind LJ 155; Norman J. Singer, 1A *Sutherland Statutory Construction*, chs 17-18 (5th ed 1992 & 1995 Supp); and Thomas M. Cooley, *A Treatise on the Constitutional Limitations*, 142-44 (1st ed 1868).

[12] A summary of the Oregon cases before 1952 can be found in Probert, 31 Or L Rev 611. A compendium of "single-subject" cases from across the nation can be found in Singer, *Sutherland Statutory Construction*, chs 17-18.

not foreign to the subject expressed in the title, they will not be held unconstitutional as in violation of this clause of the constitution. This clause is not violated by any legislative act having various details properly pertinent and germane to one general object." (Citations omitted; emphasis in *Nielson* deleted; internal quotation marks omitted.)

That quotation says that a court looks first at the body of the act itself and seeks to determine whether all provisions in the act relate to the same topic and whether they are naturally connected. *See also Calder et al. v. Orr et al.*, 105 Or 223, 230, 209 P 479 (1922) (same); *Northern Counties Trust v. Sears*, 30 Or 388, 400, 41 P 931 (1895) (same). Such an inquiry corresponds to the opening phrase of Article IV, section 20 ("Every Act shall embrace but one subject").

*Nielson* then moves to an examination of the title of the act and of the relationship between the body and the title. The *Nielson* court quotes with approval from *Clayton*, 82 Or at 156-57, as follows:

"In order to render a portion of a statute invalid for the reason that its provisions are not embraced within the title of the act in conformity with Article IV, section 20, of the Constitution, such provisions must be entirely disconnected with the subject as embraced in the title, wholly incongruous, and consist of matter of which the title gives no notice, so that the adoption of such measure by means of the title would be fraudulent.

"* * * If the matter is reasonably connected with and germane to the title under our Constitution requiring an act to embrace but one subject and matters connected therewith, which subject must be embraced in the title, the law will be upheld[.]" 257 Or at 187 (emphasis in *Nielson* deleted here; internal quotation marks omitted).

Some of this court's earlier cases also examined both the body and the title of an act in adjudicating a one-subject challenge under Article IV, section 20. *See, e.g., State v. Allen*, 152 Or 422, 430, 53 P2d 1054 (1936) (illustrating process); *Lovejoy*, 95 Or at 465-68 (same). *See also Warren*, 222 Or at 323 (in a case in which both body- and title-based arguments were made, the court noted the "corollary" connection between the two; as to the body-based claim, the court considered the provisions of the act in question, but did so by

utilizing the subject of the act expressed in the title as a referent).

In addition to explicating the overall framework for deciding a one-subject challenge, the case law is instructive on a central question that the text of Article IV, section 20, and its purposes and history do not answer fully: how to define the "one subject" that an act may embrace. Article IV, section 20, does not define what a "subject" is. The only guidance given by the text of the provision is that an act may embrace "but one" of them, "and matters properly connected therewith." By necessary implication, a "subject" must be narrower than the universe of those things with respect to which the legislature is empowered to act, or the provision would be meaningless. Also, the "one subject" must be something that can be expressed in a title.

Most recently, the court in *Nielson*, 257 Or at 186-87, quoted with approval its chronicle of the cases that had defined and applied the definition of a "subject" for purposes of Article IV, section 20. The history began with *Eastman v. Jennings-McRae Logging Co.*, 69 Or 1, 10-11, 138 P 216 (1914), one of the "leading cases":

> "All that is necessary is that the act should embrace some *one general subject*; and by this is meant merely that all matters treated should fall under some *one general idea*, be so connected with or related to each other, either logically or in popular understanding, as to be parts of, or germane to, one general subject." (Emphasis in original; citation omitted; internal quotation marks omitted.)

*See also Feero et al v. Housley et al*, 205 Or 404, 418, 288 P2d 1052 (1955) (same). The *Nielson* court also cited *Shaw*, 22 Or at 288-89, as being "[t]o the same effect." 257 Or at 186. The decision in *Shaw* states in part:

> "A reasonable construction permits the single subject to be comprehensive enough for practical purposes, and great latitude is allowed the legislature in stating the subject in the title. * * *
>
> "If all the provisions of the law relate directly or indirectly to the same subject, are naturally connected, and are not foreign to the subject expressed in the title, they will not be held unconstitutional * * *." 22 Or at 288-89.

*See also Calder*, 105 Or at 231 (everything must be part of, or incident or auxiliary to, "the object in view" (internal quotation marks omitted)); *Northern Counties Trust*, 30 Or at 401 (concluding that the "provisions of the act under consideration tend to but one general object," in rejecting a challenge based on Article IV, section 20).

One other significant attempt to define "one subject" should be noted. In *Lovejoy*, the court stated:

"The subject of the law is the matter to which the measure relates and with which it deals. The term 'subject' is to be given a broad and extensive meaning so as to allow the legislature full scope to include in one act all matters having a logical or natural connection. The subject may be as comprehensive as the legislature chooses to make it, provided it constituted, in the constitutional sense, a single subject and not several, for the Constitution does not contain any limitation on the comprehensiveness of the subject: *State v. Shaw*, 22 Or 287." 95 Or at 466 (citation omitted).

One can extract from this court's cases interpreting Article IV, section 20, over the last century certain shared ingredients in the definition of what constitutes "one subject." The legislature may choose a *comprehensive* subject for legislation.[13] But, for the contents of a bill to embrace one subject, there must be a unifying principle, referred to variously as "one general subject," "one general object," "one general idea," or "the object in view." Relatedly, for a bill to embrace one subject, there must exist among its parts some logical connection relating each to the others.

■ After considering the foregoing sources, we conclude that the appropriate analysis of a one-subject challenge to the body of an act, made under Article IV, section 20, should proceed in these steps:

(1) Examine the body of the act to determine whether (without regard to an examination of the title) the court can

---

[13] *See State v. Williamson*, 4 Or App 41, 43-46, 475 P2d 593 (1970) (rejecting an Article IV, section 20, challenge to a law that had a title stating: "Relating to crime; and providing penalties"); *see also Brunswick-Balke-Collander Co. v. Evans*, 228 F 991, 993-94 (D Or 1916) (title of the 1864 Criminal Code — "An act to provide a Code of Criminal Procedure, and to define crimes and their punishment" — sufficient to state a subject under Article IV, section 20), *appeal dismissed* 248 US 587, 39 S Ct 5, 63 L Ed 434 (1918).

identify a unifying principle logically connecting all provisions in the act, such that it can be said that the act "embrace[s] but one subject."

(2) If the court has *not* identified a unifying principle logically connecting all provisions in the act, examine the title of the act with reference to the body of the act. In a one-subject challenge to the body of an act, the purpose of that examination is to determine whether the legislature nonetheless has identified, and expressed in the title, such a unifying principle logically connecting all provisions in the act, thereby demonstrating that the act, in fact, "embrace[s] but one subject."[14]

## IV. APPLICATION OF ARTICLE IV, SECTION 20, TO PETITIONERS' CHALLENGE

 As noted earlier in this opinion, the legislature has given this court original and exclusive jurisdiction to resolve all kinds of constitutional challenges to sections 1 to 17 of the Act. We also noted above that, in resolving constitutional challenges to those sections, we may consider petitioners' arguments under Article IV, section 20, even though consideration of such arguments requires us to examine the entire body of the Act, as well as its title — not merely sections 1 to 17 — to assess the validity of those arguments.

Petitioners have summarized the contents of SB 1156 as follows:

"SB 1156 * * * (1) provides state funding [and land use procedures] for light rail, (2) expands the availability of card-lock service stations, (3) promotes 'regional problem solving' in land use matters, (4) regulates confined animal feeding, (5) preempts local pesticide regulation, (6) adopts new timber harvesting rules, (7) grants immunity to shooting ranges for 'noise pollution,' and (8) protects salmon from cormorants."

Our review of SB 1156 confirms that the foregoing summary is accurate, and the other parties to the case do not suggest otherwise.

---

[14] Because we rest our decision in this case only on petitioners' one-subject challenge to the body of the Act, we do not consider how to analyze a challenge to the title of an act or a challenge to the relationship between the body and the title of an act.

We are unable to discern a principle unifying those eight topics. Neither are we able to perceive among the parts of the Act some logical connection relating each to the others.

That being so, we move to the next step. We consider whether the legislature nonetheless has identified a unifying principle, logically connecting all provisions in the Act, that we do not yet perceive. If it has, and if the title discloses that unifying principle, then the Act, in fact, embraces but one subject.

In approaching this question, we focus on the title's "relating" clause ("Relating to the activities regulated by state government"), because that is what serves the constitutional function of the title. It is, for example, the relating clause that informs the President of the Senate and the Speaker of the House what amendments to a bill are germane. *See* Oregon Legislative Assembly, *Form and Style Manual for Legislative Measures*, 12 (1994) (the manual describes the role of titles and the rules relating to amendments).

The relating clause in the title in this case — the statement that the Act is one "[r]elating to the activities regulated by state government" — fails to identify and express a unifying principle logically connecting all provisions in the Act. It fails to perform that function, because — in this extreme case — the relating clause is so global that it does little more than define the universe with respect to which the legislature is empowered to act.

Respondents argue, however, that the relating clause is not global. They suggest that "the activities regulated" should be read to mean activities already regulated and that "state government" means that activities regulated by local governments are not included.

The "limits" suggested by respondents are illusory. The relating clause for SB 1156, even thus limited, is still so broad and general that it logically connects all provisions in the Act only in the meaningless sense that it announces a connection among nearly all things in the legislative universe. The title does not, in the constitutional sense, express a unifying principle. The phrase "[r]elating to the activities

regulated by state government" is too broad and general to unify the disparate topics embraced by SB 1156.[15]

## V. CONCLUSION

Senate Bill 1156 embraces more than one subject. That being so, a guarantee of Article IV, section 20, was not met, and the process for enacting that legislation was fundamentally flawed. *See Spaulding*, 42 Or at 398 (declaring entire act void, because the title gave no reasonable indication of the contents of the measure).

The court is obliged to consider and to remedy violations of Article IV, section 20. In this case, we hold that SB 1156 violates Article IV, section 20, of the Oregon Constitution. That being so, and consistent with the limited grant of jurisdiction in this case, we hold that sections 1 to 17 of SB 1156 are void.[16]

Sections 1 to 17 of SB 1156 (1995) are declared void.

---

[15] Our conclusion is consistent with case law in other jurisdictions having similar constitutional provisions. For example, in *Johnson*, the Oklahoma Supreme Court concluded that the Governor of that state was required to treat bills containing more than one subject as unconstitutional. 819 P2d at 698. In reaching that conclusion, the court examined the particular legislative acts at issue, in the context of that state's constitutional one-subject requirement:

"Even a cursory examination of the bills reveals that they combine general legislation provisions which bear no relationship to each other. For example, H.B. 1271 includes the unrelated topics of state employee benefits, coal-fired electric generating plants, the indigent defense system, state travel reimbursement, and officer verification of traffic citations. Such a blatant violation of the one-subject rule cannot be justified by petitioners' assertion that each provision relates to 'state government.'" *Ibid.*

[16] Petitioners also assert that sections 1 to 17 of the Act violate the following additional provisions of the Oregon Constitution, for the reasons stated in parentheses: Art XI, § 7 (lending the credit of the state or creating a liability exceeding $50,000); Art IX, §§ 2 and 6 (authorizing general fund withdrawals without providing for sufficient revenue); Art XI, § 11b (authorizing the collection of taxes on property exceeding constitutional limits to retire general obligation bonds that have not been approved by the voters). Because of our disposition of the case, we do not consider those contentions.