Argued and submitted December 17, 1998, affirmed July 7, 1999

# STATE OF OREGON,
*Respondent,*

*v.*

# DANIEL CARL MAXWELL,
*Appellant.*

(961143; CA A99963)

984 P2d 361

Thomas R. Wood argued the cause for appellant. With him on the brief was Stoel Rives, LLP.

Jonathan H. Fussner, Assistant Attorney General, argued the cause for respondent. With him on the brief were Hardy Myers, Attorney General, and Michael D. Reynolds, Solicitor General.

Before De Muniz, Presiding Judge, and Haselton and Linder, Judges.

HASELTON, J.

## HASELTON, J.

Defendant appeals from his conviction for one count of unlawful storage of hazardous waste in the first degree. ORS 468.926. He assigns error to the trial court's denial of his motion for judgment of acquittal, arguing that the state's evidence was insufficient to prove that his conduct constituted "storage" of hazardous waste. In the alternative, defendant argues that, even if he did commit an act of unlawful storage of hazardous waste, he did not "knowingly disregard the law" in doing so. We conclude that the state's proof was sufficient on both issues and, accordingly, affirm.

The material facts are undisputed. PSI Manufacturing Corporation (PSI) operated a circuit board manufacturing plant on property it leased from the Port of St. Helens in St. Helens, Oregon. In January 1994, PSI ceased operations at the plant but did not remove its processing equipment from the site. That abandoned processing equipment contained illegally stored hazardous waste, including caustic acid, lead and chromium. *See* OAR 340-100-0002 (hazardous waste left in processing equipment or containers for over 90 days must comply with statutory requirements for hazardous waste storage); 40 CFR § 261.4(c) (1997).

In the summer of 1994, defendant Maxwell purchased security interests in the abandoned processing equipment from PSI's creditors. Defendant obtained a writ of execution against PSI, and a sheriff's sale of the equipment was scheduled for December 14, 1994.

On December 13, 1994, the Oregon Department of Environmental Quality (DEQ) inspected the PSI site and discovered, among other things, the processing equipment containing (and leaking) both nonhazardous and hazardous waste. After that inspection, defendant entered into an agreement with DEQ regarding the waste in the processing equipment. He agreed to: (1) analyze and inventory the waste; (2) remove the waste; (3) submit a work plan to DEQ; and (4) dispose of the waste properly. Defendant purchased the processing equipment at the sheriff's sale the next day and immediately transferred ownership of the equipment to an unrelated party.

Following that transaction, defendant's agents went to the PSI site and transferred the nonhazardous and hazardous waste that had been stored in the processing equipment into waste storage drums. Although defendant's agents removed the equipment from the PSI site, they left the drums containing hazardous waste. Defendant did not perform any of his duties under the contract with DEQ, and no hazardous waste storage permit was ever issued for the PSI site. The drums of hazardous waste remained at the PSI site until July 30, 1996.

In April 1995, DEQ assessed a civil penalty of $210,000 against defendant for failing to perform his duties under the December 1994 agreement. Defendant did not appeal that fine, and a default judgment was entered against him for the full penalty amount. In August 1996, defendant was indicted for violating ORS 468.926, based on the illegal storage of hazardous waste at the PSI site from December 14, 1994, through July 30, 1996.[1]

ORS 468.926 provides, in part:

"(1)   A person commits the crime of unlawful disposal, storage or treatment of hazardous waste in the first degree if the person, in violation of ORS 466.095 or 466.100 or any rule, standard, license, permit or order adopted or issued under ORS 466.020, 466.095 or 466.100, knowingly disposes of, stores or tests hazardous waste and:

"(a)   As a result, recklessly causes substantial harm to human health or the environment; or

"(b)   Knowingly disregards the law in committing the violation."

Tracking the language of ORS 468.926, the indictment alleged that defendant stored hazardous waste "in violation of ORS 466.095," which provides, in relevant part:

"Except as provided in ORS 466.075(2), no person shall:

---

[1] Maxwell Systems, Inc., a Utah corporation of which defendant was an officer, was also indicted for illegal storage of hazardous waste from March 10, 1994, through July 30, 1996. No issues pertaining to the charges against the corporation are at issue on appeal.

"(a)   Store a hazardous waste anywhere in this state except at a permitted hazardous waste treatment, storage or disposal site[.]"

After a stipulated facts trial to the court, defendant moved for a judgment of acquittal, arguing that the state had failed to prove that (1) defendant's act of transferring the hazardous waste from the PSI processing equipment into secure drums constituted an act of "storage" for the purposes of ORS 468.926; and (2) defendant had "knowingly disregarded the law." The trial court denied the motion for judgment of acquittal in a letter opinion, stating:

"It appears clear that * * * ORS 466.095, the storage statute herein alleged to be violated under 468.926, given its 'plain meaning,' applies to any person as defined by 466.005(13) and that Defendant Maxwell is within this category. It is further clear [that] to 'store,' as defined by 466.005(14), is exactly what Defendant Maxwell did * * *.

"It is unnecessary to read either State of Oregon or federal administrative rules into the Oregon Statutes to determine the legislative intent behind the creation of those statutes. It is clear on the face of the statutes that the Oregon legislature intended that no 'person' should under any circumstances except for those minor exceptions set out in the statutes themselves store hazardous waste, without a storage permit. The statute does not apply only to 'generators,' 'operators,' and 'owners.' "

On appeal, defendant assigns error to that denial, arguing again that the state's evidence was insufficient to prove that his conduct constituted "storage" of hazardous waste under ORS 468.926 and that, even if he did commit an act of unlawful storage of hazardous waste, he did not "knowingly disregard the law" in doing so. We address each contention, in turn, to determine if, "after viewing the evidence in the light most favorable to the state, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *State v. King*, 307 Or 332, 339, 768 P2d 391 (1989).

■   Whether defendant's act of transferring hazardous waste from processing equipment into waste storage drums at the same site constituted "storage" of hazardous waste is a matter of statutory construction. Following the analytical

framework of *PGE v. Bureau of Labor and Industries*, 317 Or 606, 610-12, 859 P2d 1143 (1993), we look first to the text and context of the statute to discern legislative intent. Only if the language is reasonably capable of more than one construction do we examine legislative history and other tools of statutory construction in our effort to discern legislative intent. *Id.*

■ We begin with the text of the pertinent statutory provisions. A person commits the crime of unlawful storage of hazardous waste, ORS 468.926, when he or she "store[s]" hazardous waste in violation of ORS 466.095. For the purposes of that statute, "store" or "storage" is defined as

"the *containment* of hazardous waste either on a temporary basis or for a period of years, in a manner that does not constitute disposal of the hazardous waste."[2] ORS 466.005(14) (emphasis added).

Thus, the question of "storage" reduces to whether defendant's act of transferring hazardous waste from processing equipment into storage drums was an act of "containment." Giving that term its plain, natural, and ordinary meaning, *McIntire v. Forbes*, 322 Or 426, 431, 909 P2d 846 (1996), we conclude that defendant's conduct clearly constituted a "containment" of hazardous waste.[3] By removing the waste from one "container" (the PSI processing equipment) and placing it in another (the drums), defendant asserted control over the waste and "contained" it to a limited space.

■ Defendant's principal argument is that his act of transferring hazardous waste from one illegal storage container to another on the same site "did not cause him to become responsible for the ongoing illegal storage of another

---

[2] "Disposal" is defined as "the discharge, deposit, injection, dumping, spilling, leaking or placing of any hazardous waste into or on any land or water so that the hazardous waste or any hazardous constituent thereof may enter the environment or be emitted into the air or discharged into any waters of the state * * *." ORS 466.005(4). The parties agree that defendant's conduct in this case did not constitute "disposal" of hazardous waste.

[3] "Containment" is defined as an "act of containing." *Webster's Third New Int'l Dictionary*, 491 (unabridged ed 1993). The verb "to contain" is defined as "to keep within limits" or "to confine * * * to a limited area." *Id.* at 490.

and did not constitute an independent act of storage." Defendant argues, particularly, that a person does not "store" hazardous waste within the meaning of ORS 468.926 unless he or she either "(1) move[s] a waste that is outside a storage site into a storage site or (2) assume[s] control of a storage site." We disagree.

ORS 468.926 provides, without qualification, that a person commits the crime of unlawful storage if he or she "knowingly stores" hazardous waste—regardless of where that "storage" takes place and whether the waste has been previously stored. ORS 468.926. The statutory language does not exclude transfers of waste between or among containers on the same site, and we are not free to create such an exception where the legislature has not. *See* ORS 174.010 (in construing a statute, court may not "insert what has been omitted").

■     Defendant also argues that he cannot be held criminally liable for storing the waste because PSI had already committed the crime of unlawful storage of that particular hazardous waste. Again, however, the plain language of the statute does not support that construction of ORS 468.926— and neither does common sense. The fact that defendant moved the waste from one illegal storage situation to another illegal storage situation does not in any way detract from the criminal nature of his actions. Defendant violated the law by appropriating control of hazardous waste, transferring it, and storing it in drums at a site not permitted for hazardous waste storage.

■     Defendant's remaining arguments in support of his theory that he did not "store" hazardous waste similarly fail. Defendant asserts that, to prove unlawful storage of hazardous waste under ORS 468.926, the state was required to prove that he "owned or operated" an illegal storage site. Defendant is incorrect. ORS 466.095 unambiguously states that "*no person* shall store hazardous waste anywhere in this state except at a permitted hazardous waste * * * storage * * * site." (Emphasis added.) ORS 466.095 applies to any *person*, regardless of whether the person is a site owner or operator.

Finally, citing ORS 465.435,[4] defendant contends that "foreclosure upon a security interest in the absence of assuming control of the facility is a protected action that does not make the creditor liable for the underlying environmental liabilities of a site." Assuming, without deciding, the abstract accuracy of defendant's description of the operation of ORS 465.435, we agree with the state that the necessary premises for defendant's argument are not present here. As the state asserts:

> "In this case the state did not predicate criminal liability on defendant's status as a secured creditor or on any reasonable steps that defendant took incident to holding, protecting, or foreclosing on his security interest. Defendant had foreclosed on the processing equipment, and he had purchased it at a sheriff's sale on December 14, 1994 before he committed the acts that caused his conviction: removing the hazardous wastes from the equipment and storing it in barrels that he left on a non-permitted storage site in violation of the law. In short, the state did not seek to make defendant liable for the 'underlying environmental liabilities' of the site, but rather to hold him accountable for an independent criminal act of unlawful storage that he, and only he, committed."

We have considered defendant's other arguments pertaining to the "storage" issue and reject them without further discussion.

Defendant argues, alternatively, that, even if his conduct constituted "storage," the state failed to submit sufficient evidence that he "knowingly disregarded the law."[5] ORS 468.926(1)(b). On review, we consider "whether, after

---

[4] ORS 465.435 directs the Environmental Quality Commission, to, *inter alia*, adopt rules "distinguish[ing] activities that are consistent with holding, protecting and foreclosing of a security interest, and that are therefore exempt from liability, from activities that constitute actual participation in the management of a facility that may be grounds for liability under ORS 465.255."

[5] Defendant was charged with the Class B felony of unlawful storage of hazardous waste, which not only required proof that defendant knowingly stored hazardous waste, but also required proof that he either recklessly caused substantial harm to the environment or "knowingly disregarded the law" in doing so. *See* ORS 468.926(1). The indictment alleged that defendant knowingly disregarded the law, and our discussion of whether defendant acted "knowingly" relates solely to the state's proof under subsection (1)(b).

viewing the evidence in the light most favorable to the state, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *King*, 307 Or at 339.

ORS 468.920(1) defines "knowingly" for the purposes of 468.926(1)(b) as "[when] a person acts with an awareness that the conduct of the person is of a nature so described or that a circumstance so described exists." *See* ORS 161.085. Thus, to prove that defendant "knowingly disregarded the law," the state was required to prove that defendant acted with an awareness that his conduct was in disregard of the law. Defendant asserts that "no rational trier of fact could conclude that defendant knew that his actions were in disregard of the law at the time he shifted the wastes out of the PSI Manufacturing equipment." We disagree.

We conclude that, based on the facts stipulated, a rational trier of fact could conclude beyond a reasonable doubt that defendant was aware that his actions were in disregard of the law at the time that he transferred the waste out of the PSI equipment. Defendant was aware that the processing equipment contained hazardous waste subject to state regulation. Moreover, the detailed agreement that defendant entered into with DEQ before transferring the waste demonstrates, at a minimum, that defendant was aware that the PSI site was not a "legal" site for the storage of hazardous waste. A finder of fact could readily infer from those facts that, when defendant left the drums of hazardous waste at the PSI site, he was aware that he was violating the law in abandoning regulated hazardous waste at an unlawful site.

Affirmed.